## ALLEN BRISCOE *et al.*
### *v.*
## JOSEPH S. ALLISON *et al.*

1. CONSTITUTION —*law authorizing bounties to soldiers.* An act of the general assembly authorizing a county to give bounties, and to levy a tax for their payment, to induce persons to enlist in the military service, to avoid a pending draft, is held to be constitutional.

2. BOUNTIES—*offered without legal authority.* Where a county offered a bounty to persons who might volunteer, be drafted, or furnish substitutes for the military service, who should be received and credited to some town in the county, whose *quota* was not full, in the absence of statutory authority to do so, such act is unauthorized and void.

3. SAME—*given under the offer after law authorized payment of.* Subsequently to such offer, the general assembly authorized the county to pay such bounties for enlistments, and county orders, to pay them, were issued after the passage of this law, and before any further action was taken by the county authorities. *Held,* that such orders were authorized by the law, but all bonds issued before the passage of the law are invalid, and cannot be enforced against the county.

4. SAME—*unauthorized to persons furnishing substitutes.* Where the board of supervisors offered to pay a bounty to persons who might be drafted, or had furnished substitutes, and the legislature had conferred no such power, —*Held,* that county orders issued to pay such bounties are invalid, and cannot be enforced.

5. INJUNCTION—*to stay collection of tax.* Where a bill is filed to stay the collection of a tax levied to pay county orders issued for bounties, a portion of which are authorized, and a portion unauthorized by law, the court should ascertain the amount the unauthorized bear to those authorized, and reduce the levy by the proportion the former bears to the latter, and require the remainder to be collected and applied to the payment of those legally issued.

WRIT OF ERROR to the Circuit Court of Clark county; the Hon. CHARLES H. CONSTABLE, Judge, presiding.

This was a bill in chancery, filed by Joseph S. Allison, John Bartlett, Frederick Quick, William McKeen, Robert Houston, Stephen Archer, William Keelmen, Henry T. Rautt, William B. Leslie, James McCabe, Franklin Mark and William Reddick, in the Clark Circuit Court, against Allen B. Briscoe and

Charles Stroever, to restrain the collection of a tax levied on property in the town of Marshall, in that county.

The bill alleges, that the board of supervisors of the county, on the 28th day of January, 1865, passed a series of resolutions by which the county offered a bounty of $400 to each person who would volunteer, and be accepted into the military service, and be credited to the quota of the county. Also, a like bounty to all such persons who might be drafted, and should furnish a substitute accepted into the service on such quota.

On the 7th day of January, 1865, the general assembly adopted an act applying to Clark, and some other counties, by which the county authorities were empowered to levy a tax for bounties to be paid to persons enlisting in the military service of the United States.

At the March Term, 1865, the board of supervisors passed resolutions confirming those adopted in January, and offering a like bounty to any person who might enlist, or be drafted, or who might, after being drafted, furnish a substitute, who should be received into the service on the quota of any town in the county. The clerk of the County Court was authorized to issue a county order for that sum, to each person coming within the provisions of the resolutions.

It appears, that a number of such orders were issued after the adoption of the order in January, and before the passage of the law in February. That others, were issued after the adoption of the law, and before the passage of the resolutions at the March Term. Still other orders were issued after the adoption of these latter resolutions, and there were a few orders issued to drafted persons.

The board of supervisors laid a tax on the taxable property of the county, to raise a sufficient fund to redeem these county orders. The tax was extended upon the collector's books, which were placed in his hands for collection, and he was about to enforce the same, when this bill was filed to restrain him therefrom, upon the alleged ground that the levy was illegal and void.

A temporary injunction was granted. Answers were filed,

and replications thereto. A hearing was had on the bill, answers, replications and exhibits, when the court rendered a decree, making the temporary injunction perpetual. To reverse which, defendants prosecute this writ of error.

Mr. JOHN SCHOLFIELD, for the plaintiffs in error.

Messrs. GOOKINS & ROBERTS, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is urged in this case, that an act of the legislature, authorizing a county to offer bounties and levy a tax for their payment, to induce persons to enlist in the military service, to escape a pending draft, is unconstitutional. In the case of *Taylor* v. *Thompson*, 42 Ill. 9, it was held that such a law, authorizing a township to offer such bounties, and to levy such a tax, was both constitutional and for a corporate purpose. We again hold in the case of *Henderson* v. *Lagow*, id. 360, that the same rule, in principle, applied to a county having similar authority to pay such bounties and to collect such taxes. That such power was within the scope of legislative authority. These cases fully dispose of this question.

The county, it appears, on the 28th of January, 1865, passed a series of resolutions to offer bounties to all persons who should volunteer for the service, and to involuntary enlistments, as well as to persons who should be drafted, and received into the service under the existing call for men, or should be drafted and furnish a substitute; provided they were severally credited to some town whose quota was not full. These resolutions were adopted without any statutory authority, and, consequently, conferred no rights and imposed no obligations.

Afterward, however, on the 7th day of February, 1865, the general assembly passed an act authorizing the board of supervisors in this and some other counties, at any regular or special session, to levy such special tax upon the taxable property of the county, as in their opinion might be necessary to raise a

sufficient fund to pay a bounty to persons enlisting in the military service of the United States, during the continuance of the present rebellion, not to exceed one hundred thousand dollars for each county. Private Laws 1865, vol. 1, p. 110. The other provisions of the act relate to the mode of its execution, and are not material to the questions involved in this record.

On the 15th of March the board of supervisors resolved, that, as doubts existed as to the validity of their proceedings in January, and as the act of the legislature had been adopted conferring power in the premises, they, to remove all doubt, passed another set of resolutions. By them they declared that all persons who had theretofore, or should thereafter, voluntarily enlist or be drafted into the service, and credited to any town in the county until its quota was filled, should be paid a county order for four hundred dollars. And the county clerk was required to issue and deliver an order for that amount to each of such persons. They also provided for a like bounty to every person that should furnish a substitute. They also declare that orders issued under the resolutions of the previous January should be valid. They at the same time levied a tax of six and a half per cent on the assessed value of the taxable property of the county to pay these several bounties.

As regards the county orders issued to pay bounties for enlistments made after the 15th of March, when the latter resolutions were adopted, there can be no question of the power to issue them. The act conferred the power, and the resolutions manifest the intention to act under its provisions, and the issuing of the orders and the levy of the tax to provide a fund to meet and redeem them, was fully warranted, and their action to that extent must be held to bind the county, and to authorize the enforcement of the tax.

It, however, appears that a small number of county orders were issued and delivered to persons who enlisted after the passage of the law and before the adoption of the resolutions to carry out its provisions. And it is insisted that these bounties were not authorized and that the tax levied for their payment should therefore be restrained in its collection. This,

of course, depends upon the authority conferred by the act of the legislature. It declares that the board of supervisors may levy a tax to pay bounties to persons enlisting in the service during the continuance of the present rebellion. The act does not declare that they may do so to pay for enlistments after they shall, as a board, determine to pay such bounties, but that they may pay such for enlistments during the continuance of the rebellion. The rebellion did continue after the passage of the law, and until after these enlistments were made, and they are fully within the authority conferred, and the portion of the tax necessary for the payment of orders issued to them as bounties was authorized and should not be enjoined.

It appears that bounties were paid in county orders to six or eight persons who enlisted after the resolutions adopted in January and before the passage of the law. Were such enlistments embraced in the law? From the language of the law we infer it was designed to operate prospectively and not retrospectively. It in terms provides for enlistments which shall be made during the continuance of the rebellion; not those who had enlisted. And when we look to the object of the enactment, it seems to be clear that such was the legislative will. It was designed to enable the citizens to avoid a future draft then impending. To have paid persons who had already enlisted would not promote the object intended. That could only be done by inducing the requisite number of persons to enlist, and hence the bounty was offered and paid to stimulate the filling up of the quota of the county. If the legislature had intended to embrace past enlistments other and different language would have been employed.

There remains to be considered the question whether the county orders issued as bounties to the persons who were drafted and had furnished substitutes were authorized. While the clerk was, by the resolutions adopted, directed to issue orders to such persons, the act of the legislature confers no power. We held in the case of *Drake* v. *Phillips*, 40 Ill. 388, that a tax levied by a town to refund money paid for substitutes and enlistments, in the absence of legislative authority,

was without legal warrant, and its collection was restrained. The statute has conferred no power on the county to pay bounties to drafted men who had been mustered into the service, or who had furnished substitutes. The policy of the act was to induce enlistments and to save the county from a draft, and that is the consideration for the orders issued to pay the bounty. After a person had been drafted and placed in the service, or his substitute had been accepted, there was no necessity to pay him money, nor would such payment be founded upon any such consideration. It would in no wise tend to relieve the county from the unfilled quota. Such persons are then in the service of the government, and have no pecuniary claim on the county, nor can the county then pay them for their services to the general government any more than they could bestow bounties on persons remaining at home, or pay the debts of individuals. The statute, however, has made the act of enlistment a sufficient consideration to support a contract to pay a bounty to induce the enlistment. These county orders were therefore issued without legal authority and should not be paid.

But must the collection of the entire tax of this town be restrained because some eight or ten orders out of more than one hundred were illegally issued? Under a bill properly framed, a court of chancery would not prevent the holders from collecting, or the treasurer from paying them. Or if the court can, under this bill, ascertain the proportion that the illegal bears to the legal bonds, it could thereby be determined what portion of this tax would be illegal, and, when ascertained, the portion of the tax necessary, and which would go to pay those illegally issued bonds, should be restrained and the remainder collected. The decree of the court below is reversed and the cause remanded, with directions for the court below to ascertain the proportion of this tax which was levied to pay these illegal bonds, and to render a decree enjoining the collection of that proportion of the tax, and dissolving it as to the remainder.

*Decree reversed.*