CHARLES P. ALLEN, Treasurer and Collector of Bureau County, State of Illinois,

*v.*

THE PEORIA AND BUREAU VALLEY RAILROAD COMPANY.

1. TAXES — *special tax* — *to be valid must be authorized.* The levy of a special tax for purposes not authorized by the legislature, is void. Thus after the passage of the act of 1863, authorizing " county courts, for county business in counties without township organization, and the board of supervisors of counties under township organization in such counties as may be owing debts which their current revenue under existing laws is not sufficient to pay, may, if deemed advisable, levy a special tax, not to exceed, in any one year, one per cent, upon the taxable property of any such county, to be assessed and collected in the same manner, and at the same time and rate of compensation as other county taxes ; and when collected, to be kept as a separate fund, in the county treasury, and to be expended under the direction of the said county court, or board of supervisors, as the case may be, in liquidation of such indebtedness," the supervisors of Bureau county passed a resolution levying among other taxes a special tax " for the purpose of liquidating the interest on any loan made, *or to be made,* and to provide for paying the indebtedness of Bureau county, for war purposes, one dollar on one hundred dollars of valuation "; and payment thereof was resisted, on the ground that the supervisors had no authority to levy a tax to liquidate interest on *loans to be made.* *Held,* that the levy was unauthorized, and void to the extent of *future loans.*

2. SAME — *legal not invalidated by connection with unauthorized, if separable.* The board of supervisors having authority to levy a tax to pay existing indebtedness, the levying of a tax, in connection therewith, to pay a non-existing indebtedness, does not render the entire levy void, if the authorized can be separated from the unauthorized.

APPEAL from the Circuit Court of Bureau county ; the Hon. M. E. HOLLISTER, Judge, presiding.

In September, 1864, after the passage of the act of February 16, 1863, entitled "*An act to enable counties owing debts to liquidate the same*"— an extract from which will be found in the opinion of the court — the board of supervisors of Bureau county, passed the following resolutions :

"*Resolved*, That the sum of fifty cents on the $100 valuation of the taxable property in the county of Bureau, is hereby levied to defray the county expenses for the year 1864.

"*Resolved*, That there be, and is hereby levied, fifty cents on each $100 of taxable property in Bureau county, for the relief of needy families resident in said county, of persons who have and may hereafter volunteer in and from said county, into the military or naval service of the United States.

"And, also, that there be levied the sum of one dollar on each one hundred dollars of taxable property in said county, for the purpose of liquidating the interest on any loan made or to be made, and to provide for paying the indebtedness of Bureau county, for war purposes.

"*Resolved*, That the sum of forty cents on the $100 of taxable property in the county of Bureau, is hereby levied for the purpose of liquidating the indebtedness of the county to Messrs. Ruxton & Co., maturing on or before October 1st, 1865.

"*Resolved*, That the treasurer of Bureau county be and is hereby authorized to borrow a sum of money on the credit of the county, not exceeding $7,000, for the purpose of meeting such portion of the indebtedness of the county as shall mature before the next tax can be collected, for such length of time as in his judgment such sum may be required, at a rate of interest not to exceed ten per cent per annum."

Under the resolution to levy the tax to pay interest on loans made and to be made, and pay indebtedness of the county, the sum of $272, was levied on the Peoria and Bureau Valley railroad. The railroad company paid all the taxes levied upon its property except the said $272, which it refused to pay, on the ground that such tax was unauthorized. Whereupon the treasurer brought suit to recover the balance of $272 so levied, for which amount the court gave judgment, and the defendant appealed.

Mr. GEO. L. PADDOCK, for the appellant.

Mr. GEO. C. CAMPBELL, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The question is presented by this record whether the tax for which this suit was brought was authorized and legal. It appears that the board of supervisors of Bureau county, at their September session in 1864, levied five mills on the dollar of taxable property to defray the expenses of the county; five mills for the benefit of the families of volunteers; one per cent for the purpose of liquidating the interest on any debt made or to be made, and to provide for paying the indebtedness of Bureau county for war purposes; and for paying indebtedness to Euxton & Co., four mills on each dollar of taxable value. Appellee paid all of the taxes levied upon its property, except that to meet interest on any loan made or to be made, and to pay indebtedness of the county. The tax for this purpose imposed upon appellee's property amounted to $272, which they contend was levied without legal authority and is void.

It appears, from the treasurer's report made to the board at the time this tax was laid, that there would be various sums of money required by the county to meet expenses and indebtedness. It appears from that report that the total county indebtedness amounted to $45,563.38. That relief purposes would require $25,000. The expenses of the Circuit Court would require $3,000; expenses of the county farm $2,000; expenses of the county $12,000; expenses of collecting tax, etc., $2,000; in the aggregate $89,563.38. From this sum $4,715.70 cash in the treasury was deducted, leaving a balance of $84,847.68. The various levies not in controversy, on the taxable property of the county, would produce about the sum of $57,163.15, which, deducted from the balance required as shown by the treasurer's report, would leave a deficit of $27,684.53. And the law of February 10, 1863, gave the board of supervisors power to levy not exceeding one per cent to meet this indebtedness.

A levy of sixty-eight cents on the $100 of the taxable property of the county would have produced the necessary sum, while the one per cent which was levied created about $13,000 more than the required sum, which it is claimed vitiated the whole levy of this item.

The first section of the act of 1863, under which authority to make this levy, is claimed, is this:

"That the county courts for county business in counties without township organization, and the boards of supervisors of counties under township organization, in such counties as may be owing debts which their current revenue under existing laws is not sufficient to pay, may, if deemed advisable, levy a special tax, not to exceed in any one year, one per cent upon the taxable property of any such county, to be assessed and collected in the same manner, and at the same time and rate of compensation, as other county taxes; and when collected to be kept as a separate fund in the county treasury, and to be expended under the direction of the said county court or board of supervisors, as the case may be, in liquidation of such indebtedness."

It will be observed, that, by the provisions of this act, the board of supervisors had power to levy a tax, not exceeding one per cent on the assessed value of the property of the county, to pay debts that may be owing by the county. By far and reasonable intendment this language can apply to existing indebtedness, but not future anticipated indebtedness. And the language of the latter clause of the section would seem to render it more clear and unmistakable, because it provides that when collected it shall be kept as a separate fund, and be expended in the liquidation of such indebtedness. From this provision it is manifest that it can be applied to no other purpose. And if the future indebtedness should never be incurred, as it seems to be admitted it was not in this case, then the fund becomes useless, and could only be returned to the taxpayer, involving expense, waste and loss, as many persons from

removal, absence or other causes, would never receive back the money they had thus been compelled to pay, even after deducting the expense of collecting and refunding the tax.

In this case the language of the board in laying this tax is "to liquidate interest on loans made, or to be made." It hence appears from this order, and the treasurer's report, upon which they, no doubt, acted, that both kinds of indebtedness were intended to be embraced. It is, however, said, that the tax would be legal if for a purpose authorized by law, although the purpose of the levy was not specified, or even if an improper purpose was recited. This would seem to be no answer, as it affirmatively appears that about thirteen thousand dollars of this levy was unwarranted and not authorized. This excess was, therefore, void, and there could be no rightful pretense for its collection.

It is, however, urged, that this levy was rendered valid by the sixth section of the act of the general assembly, approved January 18, 1865. Private Laws, vol. 1, p. 100. An attentive consideration of this act has satisfied us that it does not embrace this levy. It only purports to legalize taxes levied to meet appropriations made, or paying any indebtedness within the county, by reason of bounties offered to volunteers who had enlisted and been mustered into the service of the United States. This act obviously and in terms refers alone to indebtedness already incurred for the specified purposes. It will bear no other construction, and as it does not appear that the county had incurred such indebtedness, and levied this excess for the purpose of discharging the same, it was not cured·by this act. Nor do we see that the ninth section of the act of the 2d of February, 1865 (Private Laws, vol. 1, p. 100), renders this excessive levy legal. It is true that it legalizes taxes levied to meet appropriations made, to meet indebtedness incurred or thereafter to be incurred by the county, by reason of bounties offered to volunteers, or for money paid to drafted men, enlisted men, or such as might be drafted, or should enlist into the service of the United States. There is nothing in this record from which it appears that any such indebtedness

had accrued, or did subsequently accrue, hence this levy is not embraced within its provisions.

Did this excess, in the exercise of this power, render the whole tax void, the legal as well as the unauthorized portion? As a general rule, subject it may be to some exceptions, where a person while exercising delegated powers, whether for the public or for private individuals, performs acts within the scope of his authority, and others beyond its scope, the acts well performed will be sustained, and those unauthorized will be held void, where they are of such a nature as to be separated without producing injury. But, on the other hand, if the acts are of such a character that the legal cannot be sustained independently of the unauthorized acts, then all must fall together as unwarranted. Then, having seen that the board were authorized to levy a sufficient sum to meet existing indebtedness, but not the excess, the question is presented whether that portion which the board had competent authority to levy, can be separated from that portion which was unwarranted.

Had an application been made for a judgment against real estate, and had the sale been made under an order of the court for the entire sum levied, there can be no question, that it would have been illegal. But had the court, on objections interposed, or otherwise, have ascertained by computation, the portion which could have been legally levied, and have rendered judgment for that portion of the whole levy, could it be said that the sale would be void for that reason? We think not. Such a separation of the legal from the illegal portion of the act would be easy and certain, and could not produce injury to any one. In the case of *Briscoe* v. *Allison*, 43 Ill. 291, where an injunction was sought to restrain a tax which was in part excessive, the excess was enjoined, and the bill dismissed as to the remainder. And we see no valid distinction between that and the case at bar. In this suit for the recovery of the tax, it is agreed no exceptions shall be taken to the form of action or the parties, and that being so, no reason is perceived why the plaintiff below may not recover. The court

can readily by computation ascertain the portion which was authorized from the portion that was unwarranted, and ascertain the amount, and render judgment for its recovery. The judgment must therefore be reversed and the cause remanded for further proceedings.

*Judgment reversed.*