SILAS H. CORN, Respondent, v. CITY OF CAMERON, Appellant.

Kansas City Court of Appeals, December 7, 1885.

1. TAXATION—MUNICIPAL IMPOSITION OF TAXES—CASE ADJUDGED.—In a suit to recover back, with interest, an amount alleged to have been illegally collected by defendant from plaintiff on account of taxes imposed on his personal property, the case was thus: Both at the time the county assessor assessed the property of plaintiff for June, 1881, and at the time (to-wit, June, 1882), when the defendant city undertook to impose the tax, the plaintiff, the owner, was *not a resident within the corporate limits of defendant.* He was not so brought in until the sixteenth day of June, 1882, and four days thereafter defendant undertook to impose a personal tax on his property based on the certificate of assessment made by the county assessor, as of June 1, 1881, for state and county purposes. Defendant is a city of the *fourth* class under the statute. *Held,* that such municipalities are not permitted to collect taxes on property situate outside of their corporate limits.

2. ——— TAXING PROPERTY BY CITY OUTSIDE OF CORPORATE LIMITS.—The taxing of property outside of the city for those inside of it is, in effect, taking the property of the citizen for private use, and any act of the legislature compassing such an end is violative of fundamental law.

3. ———— WHERE PERSONAL PROPERTY IS TAXABLE.—"A tax assessed against the person for personal estate is to be assessed to him at the place of his residence, because in contemplation of law, his movable property accompanies him wherever he goes. This is the general rule,'though tangible personal property may be taxed where it is, irrespective of ownership, if the statute shall so provide. A personal tax cannot be assessed against a non-resident; neither can the property of a non-resident be taxed unless it has an actual *situs* within the state, so as to be under the protection of its laws." Cooley on Taxation, 269.

4. ———— BURDEN OF PROOF AS TO VALIDITY OF TAX.—Although personal property *may be* so used and kept within the corporate limits of a town as to be taxable there notwithstanding the domicil of the owner may be without its limits; yet, this is the *exception* to the general rule, and it devolves on the municipality to *show* by *proof* that the property is within its jurisdiction, under circumstances such as would show that it had an actual *situs* there.

5. PRACTICE—NEW ISSUES IN APPELLATE COURT INADMISSIBLE.—Where a case is tried on a particular theory in the court below, the party maintaining it cannot be permitted after losing on his accepted theory, to shift sail in the appellate court and tack in another direction, and claim that to be error which he invited the court to accept as correct.

6. TAX—CHARACTERISTICS OF—PRESUMPTIONS.—"A tax in its essential characteristics is not a debt, nor in the nature of a debt. It is not founded on a contract or agreement. It operates *in invitum.*" *Pierce v. Borton,* 3 Metcalf (Mass.) 520. It is the taking of private property for public use. No presumptions, in the absence of statutory regulation, are indulged in favor of the tax proceeding. "No presumption is made in favor of a tax title under city ordinances, a party relying upon such a title must show a strict compliance with all the pre-requisites." *Nelson v. Gœbel,* 17 Mo. 161. The general rule that all public officers are presumed to have done their duty until the contrary appears, is limited by the rule that in all *ex parte* proceedings the party claiming under them must make strict proof of the performance of every pre-requisite of the law.

APPEAL from Clinton Circuit Court, HON. GEO. W. DUNN, Judge.

*Affirmed.*

The case is stated in the opinion.

WILLIAM HENRY, for the appellant.

I. The evidence offered by the plaintiff will be

taken as a concession that defendant was a city of the *fourth* class, and had the power and it was its duty under sections 4952 and 4953, Revised Statutes, to tax the plaintiff's property and all other property "within such city made taxable by law for state purposes;" and under said sections the tax book offered in evidence by defendant, and received without objection, with the certificate of the county assessor to the same, was, at least, *prima facie* evidence of the correctness of the assessment, and it being conceded, as well as disclosed by said tax book, that a levy was made of one per cent. of the valuation of the property, the judgment of the circuit court is clearly against the evidence.

II. The only claim of plaintiff to overcome the defendant's *prima facie* case is the admitted fact "that on June 16, 1882, defendant enlarged its corporate boundaries so as to take in the residence of plaintiff, and that *until that time* plaintiff had never resided within the territorial limits of the city of Cameron." But even this will not overcome the presumption that plaintiff's personal property as taxed by the city was in point of fact in said city and made taxable; unless the presumption that the *situs* of personal property is actually or constructively at the place of residence of the owner is so strong as to outweigh all other presumptions; and even that will not exempt the plaintiff in this case, for then there would be an accumulation of presumptions that the property taxed was in the city, and subject to taxation therein from and after June 16, 1882, at which time the boundaries of the city were made to extend beyond and include his residence.

III. From this, two things must follow: (1) The facts found by the assessor are either so far judicial in nature as to be *conclusive*, or ministerial and *presumptively* correct. (2) That the length of time elapsing between date of extension of city limits, and the date of finding and certifying the facts and fixing the rate of tax, can make no difference as to amount of tax, or otherwise, and is immaterial.

S. H. Corn, for the respondent.

I. Taxes are charges imposed by the supreme power of the state upon persons and property within the jurisdiction of that branch of the government authorized by the law to exercise the taxing power, in consideration of the protection afforded the citizen to his life, liberty and property. Cooley on Taxation, 1, *et seq*, also, 14; *Glasgow v. Rowse*, 43 Mo. 489; *Sheehan v. Hospital*, 50 Mo. 155; *Neenan v. Smith*, 50 Mo. 529.

II. The legislature cannot authorize a municipal corporation to levy taxes on persons or property not within its limits. Cooley on Taxation, 121, and cases cited; *Ibid*, 14; *St. Charles v. Nolle*, 51 Mo. 122; *Wells v. Weston*, 22 Mo. 384.

III. As to *real* property its *situs* within the jurisdiction of the taxing power determines its liability to taxation, and the burden is imposed upon *the thing itself*. As to *personal* property the burden is imposed upon the *owner*, and his *domicil* within the jurisdiction fixes the liability to taxation. Rev. Stat., sect. 6662; *Stevens v. Mayor*, 34 Mo. 323; *St. Joseph v. Saville*, 39 Mo. 460; *St. Louis v. Ferry Co.*, 40 Mo. 580.

IV. The time fixed by law at which the annual burden of taxation shall attach and become a lien (as in the case of real estate), or a charge against the owner (as in the case of personal property), fixes the liability of persons and property to taxation for that year; and no municipality can levy a tax upon property or persons *not within its jurisdiction at that time*. Cooley on Taxation, 260, 251, and cases cited in notes 1 and 3; *McLaren v. Sheble*, 45 Mo. 130; *Blossom v. VanCourt*, 34 Mo. 390; Rev. Stat., sect. 6716; Acts 1881, 180, sect. 7.

V. The assessment fixes the liability of the property to taxation on the *first day of June* of each year. Acts 1881, 178. Between that day and the first of January thereafter, the assessor lists and values the property. The legislature for the state, the county court for the county, and the board of aldermen for the city make the

levy, and levy such per cent. upon the valuation as will yield the amount of revenue required for the fiscal year. The clerks then extend the levy upon the "tax books." Every step in the proceeding relates back *to the day the law charged the property* with the burden of the tax. Acts 1881, 178; *Blossom v. VanCourt*, 34 Mo., *supra; McLaren v. Sheble, supra.* Property not within the jurisdiction of the taxing *power on that day* would be *exempt from taxation* as completely as if it was not in existence on that day.

PHILIPS, P. J.—This action was instituted in a justice's court by respondent to recover from defendant the sum of $57.87, with interest, alleged to have been illegally collected by defendant from plaintiff on account of taxes imposed by defendant on plaintiff's personal property. The contention of plaintiff is that at the time the assessment was made he was not a resident of the defendant city, and his personal property was only taxable at the place of his domicil. The contention of defendant is that the property assessed had acquired an actual *situs* within the jurisdiction of defendant. The case was tried before the circuit court, whither it had been taken on appeal from the justice's court, without the intervention of a jury. The court found the issues for the plaintiff, and the defendant has brought the case here on appeal.

I. It is always important in the consideration of a case to keep constantly in mind its special facts, as disclosed by the record. This is essential to avoid mere discursive discussion of extraneous matters, and the premature delivery of opinions on questions not before the court.

The conspicuous facts disclosed by the agreed statement between the parties are the following: Both at the time the county asssessor assessed the property of plaintiff for June, 1881, and at the time, to-wit: June, 1882, when the defendant city undertook to impose the tax, the plaintiff, the owner, was not a resident within

the corporate limits of defendant. He was not so brought in until the sixteenth day of June, 1882. And four days thereafter the defendant undertook to impose a personal tax on his property, based on the certificate of an assessment made by the county assessor as of June 1, 1881, for state and county purposes. The plaintiff having paid this tax under protest, the city collector covered it into defendant's treasury. It is admitted that defendant is a city of the fourth class under the statute. This was the plaintiff's case when he rested.

I take it to be too clear almost for argument or citation of authorities that had this been all the evidence, the verdict must have been for the plaintiff. In the first place such municipalities are not permitted to collect taxes on property situate outside of their corporate limits. By the very terms of the statute (sections 4952 and 4953, Rev. Stat.) the mayor of the city is authorized to apply to the county assessor only for, and the county assessor can only certify to the city authorities, "property within such city;" and the board of aldermen are only authorized to impose taxes on "real and personal property within the limits of such city."

This, too, is the generally accepted doctrine aside from any positive statutory regulation. In *Wells v. City of Weston* (22 Mo. 384), it is held that the taxing of property outside of the city for the benefit of those inside of it is, in effect, taking the property of the citizen for private use, and any act of the legislature compassing such an end is violative of fundamental law. This was also followed in *St. Charles v. Nolle* (51 Mo. 122), where the city undertook to tax a party who lived in the country, but was employing his team in hauling goods from without into the city. In *Stephens, Adm'r, v. Mayor of Boonville* it was held that the city had no right to tax notes, etc., in Stephens' hands as administrator of a decedent who resided in the country at the time of his death, although Stephens actually kept the notes in town. See, also, Cooley on Tax., ch. 5, 121.

The agreed statement shows that at the time this

assessment was made the plaintiff was a non-resident of the defendant city. Cooley on Taxation, page 269, states the general rule of law to be that: "A tax assessed against the person for personal estate is to be assessed to him at the place of his residence, because in contemplation of law his movable properly accompanies him wherever he goes. This is the general rule, though tangible personal property may be taxed where it is, irrespective of ownership, if the statute shall so provide ;" and on page fourteen he says: "a personal tax cannot be assessed against a non-resident, neither can the property of a non-resident be taxed unless it has an actual *situs* within the state, so as to be under the protection of its laws."

Burroughs on Taxation, section 97, page 215, says: "Persons are generally assessed in the district, town, or ward in which they reside for their poll tax and their personal property. As a general rule a party is to be taxed at his domicil." On page 40 he says: "Generally the owner of property is taxed at the place of his residence for all his personal property, but where the property has a visible and tangible existence, not at the domicil of the owner, and is permanently situated at another place, it is liable to taxation at the place of its situation." And as a conclusive assurance that Burroughs recognizes the general rule to be that the presumption is, that the personal property is at the domicil of the owner for the purposes of taxation, on page 218, he says: "The general rule is altered in many of the states as to certain classes of personal estate, and the personal property is to be assessed at its *situs*, or at the place where the business is conducted about which it is used, or in which it is invested."

This general rule was recognized by our supreme court in the *City of St. Louis v. Wiggins Ferry Co.* (40 Mo. 589), by saying that it "does not *necessarily* follow the domicil." It may acquire an actual *situs* separate from the domicil. So it was recognized in *Stephens, Adm'r, v. City of Boonville, supra.* Nor does the case

of *State ex rel. Taylor v. St. Louis County Court* (47 Mo. 594), at all conflict with that of *Stephens v. City of Boonville.* While the owner of the bonds resided in Illinois at the time of his death, it became necessary to have an ancillary administration in this state in order to collect and administer the bonds here. They were accordingly held, inventoried and administered here. It was held that while "the *situs* of personal property is the domicil of its owner," yet this fiction or presumption of law gives away when the truth appears that the personalty has an actual *situs* apart from the domicil of the owner. The exception to the general rule applied in this case grew out of the exceptional situation of the case. The bonds in question had to be transferred to this jurisdiction for administration. They had to be held and used here under the protection of our laws. The funds in the hands of the administrator were primarily liable for the payment of the debts of the intestate in this state, and no part thereof could be transferred to the administrator in Illinois until the local debts here were fully satisfied. So it was held the property had acquired, *sub modo,* an actual *situs* here, and was, therefore, subject to local taxation. It could "have no other *situs.*" But, as to property situate within the state at the time of the death of the intestate that decision has no proper application. Judge Bliss expressly recognized the correctness of the decision in *Stephens v. Boonville, supra,* for he says : "It is true that within the state personal property is required by statute to be assessed at the domicil of the owner."

Clearly, then, when the defendant admitted in the agreed statement that at the time of the assessment the plaintiff was domiciled without the jurisdiction of the defendant, it devolved upon it to show by proof that the personal property in question was within its jurisdiction under circumstances such as would show that it had an actual *situs* there. As said in *People v. Niles* (35 Cal. 387) : "To authorize the taxing of personal property in any other county than that in which the

owner resides, it must appear that the property is being to some extent kept or maintained in such county, and not there casually, or *in transitu*, or temporarily in the ordinary course or business of commerce.''

In *Hurlbut v. Green* (41 Vt. 490), the plaintiff sued defendant in trover for distraining his chattels for taxes. The defendant justified the seizure under a warrant from the authorities of the town of Waterford for taxes imposed by it on plaintiff's personal property. It was held that the burden of proof rested on the defendant to justify the taking, and it also devolved upon him to prove that plaintiff was subject to taxation in Waterford. It was also held that no presumption arose in favor of the tax, simply because the town authorities had imposed the tax. The court say: "That would be changing the burden of proof from the defendant to the plaintiff.  *  *  *  The town that sets a man in the grand list and proceeds to tax him, takes upon itself the burden and responsibility of showing that he was a resident of the town and liable to be set in the list, if the right is questioned."

II. We may concede that personal property may be so used and kept within the corporate limits of a town as to be taxable there, notwithstanding the domicil of the owner may be without its limits; but as this is the exception to the general rule, or the truth which dispels the fiction, or the maxim of the law, *mobilia personam sequuntur*, it, upon well settled rules of practice, devolved upon the defendant, claiming the protection of the exception, to make that truth appear.

The defendant at the trial, by his course, conceded this to be the rule, and, after the plaintiff had made out his *prima facie* case by the agreed statement of facts, undertook to establish the *situs* of the property within its limits. Having so tried the case on this theory, and thereby inducing the plaintiff to rely, in the first instance, on the presumption arising from his domicil, he cannot be permitted, after losing on his accepted theory, to shift sail in the appellate court and tack in another

direction, and claim that to be error which he invited the court to accept as correct. *Walker v. Owen*, 79 Mo. 568.

The defendant put the plaintiff on the witness stand, manifestly to develop what portion of this property was actually subject to its jurisdiction at the time of the imposition of the tax. It exhibited to plaintiff, while so on the witness stand, the following assessment list made by the county assessor for the year 1881:

"List of taxable personal property belonging to or under the control of S. H. Corn, of Shoal township, Clinton county, Missouri, on the first day of June, 1881.

| No. of. | Articles. | Value Dollars. | Total. | Totals for Assessment Book |
|---|---|---|---|---|
| 1 | Mare.......................... | $    50 | | |
| 64 | Neat cattle, all ages............ | 1,250 | | |
| 55 | Hogs, all ages.................. | 110 | $1,410 | |
| | Money deposited in bank....... | $1,500 | | |
| | Aggregate of all solvent notes, etc......................... | 2,500 | 4,000 | |
| | All other personal property except merchandise, etc...... | 377 | 377 | $5,787." |

Being interrogated by defendant touching the same, plaintiff testified as follows: "The fifteen hundred dollars referred to in the list 'as money deposited in the bank or other safe place' was deposited in the 'Farmers Bank,' then and now within defendant's corporate limits, and it was not a special deposit, but deposited in the course of business, was liable to be drawn out by me at any time on check or draft, that is, the bank was indebted to me in that amount. My law library was at the time of the assessment, and is now, within defendant's corporate limits. The assessor of the town of Cameron once valued it at one hundred dollars." As to the money deposited in the bank, there can be no question but it was taxable only at the place of the plaintiff's domicil. Burroughs on Taxation, page 217, says: "Where tax is imposed on 'money at interest,' whether it be secured by mortgage or otherwise, it follows the person of the owner, and is taxable to him at his resi-

dence." We decided at the last term, in *Coleman v. Lipscomb* (18 Mo. App. 443), that money deposited in bank becomes *eo instanti*, the money of the bank, and not that of the depositor. The relation of creditor and debtor exists only between the bank and the depositor. It is a mere credit of the depositor, and of course adheres to and follows his person and domicil. *Bank of Republic v. Millard*, 10 Wall. 152; *Dickson v. Coates*, 79 Mo. 250. The mere evidence of a debt is presumed to follow the owner wherever he resides. State Tax on Foreign Bonds, 15 Wall. 300.

III. As to the law books of the plaintiff, I am of opinion that they were kept and employed within the jurisdiction of defendant under circumstances which would have warranted their assessment and taxation for city purposes. But the difficulty in the way of the defendant, in this controversy, is, that it does not affirmatively appear that the county assessor ever assessed this library separately, unless it can be maintained that it was embraced under the item in the list of "all other personal property, except merchandise." If it be conceded that it may, in favor of the assessment, be presumed that it comes under this head, the further difficulty is encountered of ascertaining what valuation was placed on it, separate from the "other personal property." The only evidence of the value of the library, for assessment purposes, disclosed by the record, is the statement of the plaintiff, when on the witness stand, that the city valued it at one time at one hundred dollars; and the defendant contented itself therewith, by not further prosecuting the inquiry. The personal property, under this head, was valued by the county assessor at $377.00. Then, how are we to determine what portion of "all other personal property" is represented by the library? If a legal tax is so blended with an illegal one that they cannot be distinguished, the whole is bad. But if the legal can be separated from the illegal, the legal may be enforced. *State v. Hodges*, 14 Rich. 256; *Briscoe v. Allison*, 43 Ill.; *Allen v. Peoria & B. V. R. R. Co.*, 44 Ill. 85.

There being nothing in this record by which it can even be proximately ascertained what valuation the assessor placed on the library, if the tax on other personal property blended therewith is not sustainable, the whole must fail. It is but just to both parties, after the defendant stopped with the facts elicited from plaintiff, to infer that the money and library were the only property within the city at the time of the assessment, or at all events that as to the other personal property assessed, it was left to such inference as to its *situs* as the law makes from the facts in evidence. As we have already reached the conclusion that, without more, the law presumes that the cattle, hogs, and notes, and other personal property were at the domicil of the owner, the important and practical inquiry is, what evidence have we in this record that any of this property had acquired an actual *situs* in the defendant city prior to the time of the extension of its limits?

IV. The answer made to this question for appellant is, that by section 4953, Revised Statutes, it is declared that: "A certified copy of any tax bill included in the delinquent list approved by the board of aldermen, shall, in all cases, be *prima facie* evidence that the amount therein specified is legally due by the party against whom such tax bill is made out, and that all provisions of the law and ordinances, have been duly complied with, and that the same is a lien on the property therein described."

The contention is that this provision creates a *prima facie* case in favor of the validity of the tax; and rebuts the presumption arising from the non-residence of the property owner. But the misfortune of this contention is, that said provision of the statute has no application to the facts of this case. It applies solely to the instance where the city collector has failed to make the collection, and having returned the tax as delinquent, the board of aldermen thereupon "cause said delinquent list or a certified copy thereof, with the bills therefor, to be placed in the hands of the county collector, who shall

* * * proceed to collect the taxes due thereon." It is this certified copy of "the tax bill included in the delinquent list approved by the board of aldermen," the statute makes the prescribed *prima facie* evidence.

The record before us wholly fails to show that any such tax bill was ever certified out by the board of aldermen. On the contrary, the agreed statement expressly declares "that the plaintiff paid the tax to the *collector of defendant.*" So we must infer that the property had never been returned delinquent so as to give the board of aldermen jurisdiction to issue any such tax bill.

V. The very fact that the legislature in the instance where the county collector received such tax bill from the city authorities makes it *prima facie* evidence of certain antecedent acts essential to its validity, manifests that the legislature recognized the general rule of law to be that without such legislative provision the burden would rest on the tax collector to show the jurisdictional facts, and the regularity of the assessment, etc.

Proceedings for the enforcement of taxes are essentially *in invitum.* "A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. It is not founded in contract or agreement. It operates *in invitum.*" *Pierce v. Boston,* 3 Metc. 520 ; *Camden v. Dutcher,* 2 Dutcher 398 ; *City of Carondelet v. Picot,* 38 Mo. 125.

It is the taking of private property for public use. While constitutions and the courts recognize the obligation of the citizen to support the government that throws its shield of protection over his property, they have ever been zealous in this country to throw every reasonable safeguard around his property to prevent the unwarranted encroachment of the government in making its exactions. As it comes under the law to demand the sacrifice, it is held to obey the law, and to show its warrant for the demand. So it has ever been a cardinal rule of law, that no presumptions, in the absence of statutory regulation, are indulged in favor of the tax proceeding. Every essential fact to the exercise of the taxing power

must appear. *Morton v. Reeds*, 6 Mo. 64. In *Nelson v. Gœbel* (17 Mo. 161), it is expressly held that "no presumption is made in favor of a tax title under city ordinances. A party relying upon such a title must show a strict compliance with all the pre-requisites."

The legislature recognizing the existence of this rule of law in certain instances, as in the case of deeds for lands sold for taxes, makes. them *prima facie* evidence of the validity of the assessment. But for such legislative innovations the rule remains that in the tax proceeding the government must show its authority and the facts authorizing it to demand the exaction.

VI. No presumption arises in this case in favor of the action of the officers of this municipal government. It is an inferior tribunal. Lawson on Pres. Ev., 31 ; *Tompert v. Lithgow*, 1 Bush. 176. So our own supreme court in *Morton v. Reed, supra*, say : "The general rule, that all public officers are presumed to have done their duty until the contrary appears, is limited and restrained by the rule, that in all summary and *ex parte* proceedings, the party claiming under them must make strict proof of the performance of every pre-requisite of law." The former may be the general rule, and the latter the exception, but the former rule never was applied to cases like the present.

On the record before us, I am unable to see how the court could have found otherwise than for the plaintiff, and, in my opinion, its judgment should be affirmed. Ellison, J., concurs ; Hall, J., concurs in the result.