CASE 73—ACTION ON SHERIFF'S BOND—FEBRUARY 7.

# Howard v. Commonwealth, for use, Etc

APPEAL FROM HARLAN CIRCUIT COURT.

SHERIFF'S BONDS—COUNTY LEVY. The sureties in a sheriff's bond executed under and according to the terms of sec. 4133 of the Kentucky Statutes are liable to the county for county revenue collected and not paid.

HOWARD AND CLAY FOR THE APPELLANTS.

The bond of the sheriff provided for by sec. 4133 of the Kentucky Statutes covers State revenue alone. Kentucky Statutes, secs. 1884, 4133, 1860, 1867, 1878; Civil Code, secs. 386, 687; Boyd County v. Ross, 15 Ky. Law Rep., 520; 95 Ky., 167.

NO APPEARANCE FOR THE APPELLEE.

STONE AND SUDDUTH, in behalf of other parties having an appeal involving the same question moved for leave to file a petition for a rehearing and cited on the propriety of their doing so, Stryker v. Goodnow, 123 U. S., 540; and leave being granted, a petition was filed in which it was argued:

That the bond provided for by sec. 4133 of the Kentucky Statutes did not cover county taxes.

Citations: Fidelity & Deposit Co. v. Com., 47 S. W., 579; Ky. Stat., secs. 1884, 4558, 4556; Anderson v. Thompson, 10 Bush, 132; Kenton Co. v. Lowe, 91 Ky., 368.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Appellant Howard was elected sheriff of Harlan county in November, 1893, to fill out an unexpired term ending in January, 1895. He seems to have executed only one bond (that provided for by section 4133 of the Kentucky Statutes), and this he did on November 13th, after his election.

Thereafter he was ruled by the county court to give an additional bond, and, failing to do so, the tax books were taken from him. In the meantime he had settled with the auditor for the State revenue, and had his quietus. This suit was afterwards brought by the county against him and his sureties for something over $2,000 alleged to be still due the county, after giving him credit for various sums paid over to the county treasurer. Howard defends on the ground that when given credit for the sums paid by him, and by the amount of the uncollected taxes on the books when the county took them away from him, he will owe nothing; and the sureties defend on the ground that, while they are responsible on the bond sued on for any delinquency as to State revenue, they are not responsible for any default there may be as to the county levy, because the bond under section 4133 was executed solely to protect the State.

As to the sheriff's defense, it appears that the county itself, by amended petition, conceded a credit of $1,860, which we suppose was given on account of the uncollected taxes to which the sheriff was entitled, as he was charged with the total county levy. The question, as to the sheriff, therefore, on this trial, became one merely touching the amount of these taxes, credit for which he claimed. And, while the proof is somewhat confusing on this behalf, we think the jury was properly instructed,

and reached a conclusion substantially in accord with the proof. They found for the county the amount sued for, viz. $2,310, with a credit for some $2,190.

The question raised by the sureties is an important one, and, so far as we know, has not heretofore been the subject of direct inquiry in this court. The language of the bond is simply that the sheriff "shall faithfully perform his duties;" and in this respect it is quite a departure from the terms of the corresponding section in the General Statutes, where the language of the bond and the entire chapter on this subject look alone to the revenue due the State. Further, it is provided in the succeeding section (section 4134, Kentucky Statutes), that the county court may require the sheriff to give an additional bond or bonds whenever it may deem the interest of the State or *county* demands it. To the bond required in section 4133, therefore, is to be added another bond or bonds, if the interest of the State or county demand such additional security. Again the General Statutes provide in this connection that the "*commonwealth* shall have a lien on the real estate of the sheriff, etc., while in the Kentucky Statutes the corresponding clause is that the commonwealth, "*county*," and "*taxing district*" shall have such lien. Provision is also made in this connection for a settlement by the sheriff of his collections of county and district taxes. Section 4146. These provisions are wholly foreign to the subject-matter of the article, unless we are to regard the General Assembly as providing therein protection for the State and county revenue alike. We think the language of the various sections clearly so indicates, and this language borrows additional and conclusive significance when we consider that it is language added to the corresponding provisions of the General Statutes, where

confessedly only the State revenue was the subject of legislative protection.

It is said, however, that by section 1884, ample and special provision is made for the execution of county-levy bonds, and therefore it was not intended by the Legislature, in section 4133, to cover the same ground by providing for the execution of a county revenue bond. There is plausibility in this contention, but it is not uncommon to find provisions for the double protection of the county. Thus, in section 1884, a bond is required to be executed to cover collections of poll taxes and ad valorem taxes levied to pay off the existing current indebtedness, and to defray the current and necessary expenses of the county. In section 1860 the fiscal court was empowered to issue bonds "to fund any indebtedness contracted" in the construction, repair, or building or remodeling of any court house, jail, or other public building, or bridges or turnpikes, and in order to pay the interest on such bonds, and finally to redeem them, an ad valorem tax might be levied, which was to be collected by the sheriff, but who was to execute a bond "for the faithful performance of his duties," and for the payment of the money to the county in due time.

So, in section 1862, for the purpose of building bridges, bonds of the county are authorized to be issued, and for their payment an ad valorem tax might be levied, to be collected by the sheriff, who, however, was to execute bond "for the faithful performance of his duties," and for the payment of the money to the county in due time. So, also, in section 1872, county bonds to raise money with which "to build, repair or remodel courthouses, clerk's offices, jails and other public buildings in the several counties," are authorized; and taxes for

the purpose of paying the interest, and finally the principal, of these bonds, are to be levied and collected by the sheriff, who, however (section 1878), shall execute bond "for the faithful performance of his duties" and for the payment of the money so collected. There are probably other similar provisions, and similar bonds provided for. Manifestly, the liability of those executing these special bonds can not be executed beyond the terms of their contract; and yet, by reason of their number, or for other cause, they might not be executed. There would seem to be good reason therefore why the General Assembly, when it subsequently undertook to frame a general law, should protect the revenues of the State, and the various counties as well, by requiring a State and county revenue bond of such comprehensiveness as that those executing it would be liable for State and county revenues, of whatever kind or description. And, if the interests of the State or county demand it, even this bond may be strengthened by an additional bond or bonds. We think, therefore, the sureties in this case are liable, on the bond sued on. The other and minor questions raised were settled properly in the trial court, and the judgment is affirmed.