CASE 19—ACTION BY CERTAIN TAX PAYERS TO RECOVER AGAINST SHERIFF, MONEY ALLEGED TO HAVE BEEN ILLEGALLY COLLECTED BY HIM AS TAXES—FEB. 27.

## Whaley and Others v. Commonwealth. Ratliff, Sheriff, v. Same, and Same v. Nicholas County. (Three cases heard together.)

JUDGMENT IN FAVOR OF TAX PAYERS AGAINST THE SHERIFF AND HIS SURETIES FOR A PART OF THE TAX, AND THE SHERIFF AND HIS SURETIES APPEAL.  THE SHERIFF ALSO PROSECUTING AN APPEAL FROM A JUDGMENT IN FAVOR OF NICHOLAS COUNTY FOR THE BALANCE FOUND IN HIS HANDS OF THAT PART OF THE TAX HELD TO BE VALID; AND ARIS WIGGINS PROSECUTING AN APPEAL ON BEHALF OF THE TAX PAYERS, BECAUSE THE WHOLE OF THE TAX, IN QUESTION, WAS NOT ADJUDGED VOID.  REVERSED IN PART AND AFFIRMED IN PART.

Whaley and Others v. Commonwealth.  Ratliff, Sheriff v. Same, and
    Same v. Nicholas County.   (Three cases heard together.)

RECOVERY OF TAXES ILLEGALLY COLLECTED—ACTION BY ONE TAX PAYER
    FOR ALL—PARTIAL INVALIDITY OF TAX—SEPARATION OF LEGAL FROM
    ILLEGAL PART—LIABILITY OF SURETIES FOR TAXES ILLEGALLY COL-
    LECTED BY SHERIFF—LIABILITY OF SHERIFF FOR TAXES ILLEGALLY
    COLLECTED BY DEPUTY—INTEREST—APPROPRIATION OF TAXES TO
    PURPOSE FOR WHICH NOT LEVIED—RIGHT OF APPEAL.

Held:   1. Under Civil Code Practice, section 25, providing that "if
    the question involve a common or general interest of many per-
    sons, or if the parties be numerous and it is impracticable to
    bring all of them before the court within a reasonable time, one
    or more may sue or defend for the benefit of all," one of a num-
    ber of taxpayers from whom money has been illegally collected
    as taxes may sue for all, to recover of the collecting officer the
    money thus illegally collected.
2. In such an action it was proper to direct the master commissioner
    to ascertain the names of all persons in the county who had paid
    any part of the illegal tax, and to report the part each one had
    paid, as the basis of a final decree, and, to authorize this course,
    it was not necessary that the tax books should be filed as a part
    of the record; the commissioner having access to them as public
    records, and the law requiring them to remain in the sheriff's
    office.
3. Where a county was prohibited by the constitution from levying
    a tax rate of more than 50 cents in one year, a levy of 25 cents,
    when 34 cents had been previously levied, was void only as to
    the excess of 9 cents; the illegal part being separable.
4. Under Constitution, section 180, providing that "no tax levied for
    one purpose, shall ever be devoted to another purpose,"
    where    a    surplus    remains    after    the    purpose    for    which
    a particular levy was made has been accomplished it may
    be appropriated by the county for general purposes.
5. The sureties in a sheriff's official bond are liable for the county
    levy collected by him, where no county levy bond has been exe-
    cuted, and the fact that such a bond has been executed is a mat-
    ter of defense.
6. The sureties in a sheriff's bond are not liable for the void part of a
    county levy collected by the sheriff, and neither the sheriff nor
    his sureties are liable for the void part of such a levy collected
    by the sheriff's deputy and not paid over to the sheriff.
7. The sheriff was not chargeable with interest on the void part of
    the levy collected by him, until there had been a settlement, and
    the amount due by him had been properly ascertained.

Whaley and Others v. Commonwealth.  Ratliff, Sheriff v. Same, and
    Same v. Nicholas County.   (Three cases heard together.)

8. Under Constitution, section 157, providing that no county shall
    be authorized to become indebted to an amount exceeding in
    any year the income and revenue provided for such year, "with-
    out the assent of two-thirds of the voters thereof voting at an
    election to be held for that purpose," a vote by two-thirds of the
    voters of a county in favor of free turnpikes was a vote in favor
    of incurring the necessary indebtedness for that purpose, and au-
    thorized the county to incur an indebtedness in excess of the
    revenue provided for the year in purchasing the turnpikes in the
    county.

9. In a contest between a county and tax payers as to which is enti-
    tled to money alleged to have been illegally collected by the
    sheriff, the sheriff has such an interest as entitles him to appeal
    from a judgment against him in favor of the tax payers for that
    part of the tax held by the court to be illegal, and from a judg-
    ment against him in favor of the county for the remainder of
    the tax collected.

JUDGES GUFFY, DuRELLE, AND WHITE, DISSENTING FROM CER-
    TAIN PARTS OF THE OPINION.

C. W. WOOD AND E. M. DICKSON, ATTORNEYS FOR APPELLANTS RAT-
    LIFF AND OTHERS.

    This is an appeal by H. Whaley, W. B. Ratliff, and Waller
Sharp, sureties on the official bond of S. A. Ratliff, late Sheriff
of Nicholas county, from a judgment against them, as sureties,
in favor of Aris Wiggins, for himself and all the tax payers of
said county, in the name of the Commonwealth of Kentucky,
for taxes collected or received by said Sheriff under an illegal
levy.  By agreement this is to be tried with the cases of Ratliff
v. Commonwealth, No. 277; atcliff v. Nicholas County, No. 278;
and Ratcliff and Others v. Nicholas County, No. 279.  Briefly
stated, the plaintiff claims that the Nicholas Fiscal Court at its
April term, 1897, levied *ad valorem* taxes aggregating 34 cents,
on each $100, worth of taxable property, and entered into cer-
tain contracts for the purchase of certain turnpike roads; that
on June 17, the said court levied an additional *ad valorem* tax of
25 cents on each $100.00; that said levies exceeded the constitu-
tional limit and are therefore void, and that the indebtedness
incurred about said turnpikes was without the assent of two-
thirds or any number of the voters of said county, and exceeded
the revenue income for said year.  That Ratliff, as Sheriff, re-
ceived from all the tax payers, $23,237.40, and of this sum,
$9,846.35, or 25-59 of the first sum, was illegally collected.  By

Whaley and Others v. Commonwealth.  Ratliff, Sheriff v. Same, and
Same v. Nicholas County.  (Three cases heard together.)

an amended petition plaintiff withdraws claim to all the funds,
except 9-59 of the gross sum which is alleged to be $3,242.79, for
which judgment is asked.

The petition does not set out or allege that Wiggins or any
tax payer, paid any definite sum.

The following questions are raised by demurrers and motions:

1. Can Wiggins sue in his name for all the tax payers in the county
   to recover a gross sum alleged to have been paid by the tax pay-
   ers of the county and no joint-payment being alleged?

2. Is there such a general interest in the subject matter, as would
   entitle Wiggins to sue for all the tax payers under our Civil
   Code, sec. 25?

3. What right has Wiggins to sue for money paid by another tax
   payer, not jointly with him, but separate and independent of
   him?

4 Can Wiggins by alleging a lump sum and not setting out the
   amounts paid by each tax payer, nor even by himself, use the
   gross sum paid by all, in order to have the court acquire juris-
   diction?

5. The Commissioner's report showing that Aris Wiggins paid, under
   the illegal levy, to one R. P. Sparks, the small sum of $9.25; is
   he such a fair representative of the class sued for as would be
   permitted, under the general rules of law, to sue in behalf of this
   class?

6. What equity is there disclosed in plaintiff's claim, unless perhaps
   it be to prevent a multiplicity of suits, and has Wiggins the
   right to complain of a multiplicity of suits?

7. Are not the claims of each tax payer separate and distinct, and
   were not the transactions as alleged separate transactions?  Can
   the sureties be denied the right to contest the claim of each tax
   payer, and should not each tax payer set out his cause of ac-
   tion?  Can the sureties be bound or concluded by a judgment in
   favor of Wiggins, and have no day in court as to the merits of
   the claim of each individual tax payer?  Were the payments
   by the tax payers a unit?  After a judgment in favor of Wiggins
   how could these sureties contest the claims of the tax payers,
   and if more money was recovered than was actually received by
   Ratliff, who is to receive it—Wiggins?

8. It being admitted that the money sued for is illegal taxes collected
   by the Sheriff, are the appellants, sureties on the official bond of
   the Sheriff, liable for same, the covenant of the bond being for
   the *faithful performance* of his duties; or is the Sheriff himself
   personally liable, but his sureties not responsible for money col-
   lected without warrant of law, or under a void order?

Whaley and Others v. Commonwealth. Ratliff, Sheriff v. Same, and
Same v. Nicholas County. (Three cases heard together.)

### AUTHORITIES CITED BY E. M. DICKSON.

Civil Code Title, 3 chap. 1, sec. 25; Pomeroy's Equity Juris-
prudence, p. 292; sec. 268, vol. 1; Smith, &c. v. Swormstedt, &c.,
U. S. Sup. Ct.; 16 Howard, 288; Oswald, &c. v. Morris, &c., 92
Ky., 48.

Authorities cited in C. W. Wood's brief in regard to the lia-
bilities of sureties: Hawkins v. Com., 1 T. B. Mon., 146; Brown
v. Com., 6 J. J. Marshall, 636; Arnold v. Summers, 3 Bush., 555;
Mercer County v. Gabbert's Admr., 5 Bush., 438; Griffith v. Com.,
10 Bush., 284; Hughes v. Cotton, 13 Bush., 600; Greenwell v.
Com., 78 Ky., 320; Dawson v. Lee & Lee v. Hill, 83 Ky., 55;
Osenter's Admr. v. Burnett, 19 Ky. Law Rep., 610; Am. & Eng.
Ency., vol. 24, p. 749-879; Ryan v. Williams, 29 Kansas, 487; U.
S. v. Morgan, 28 Fed. Rep., 28; State v. Bonner, 72 Mo., 387;
People v. Lucas, 93 N. Y., 585; People v. Hilton, 36 Fed. Rep.,
172; Civil Code, chap. 9, sec. 140; Ency. Pleading and Practice,
vol. 6, p. 767, 768, 777; Pomeroy's Eq. Jur., vol. 1, p. 206.

WINFIELD BUCKLER, ATTORNEY FOR APPELLEE.

(No brief, except in response to appellant's brief.)

"If the tax collector has actually collected taxes and appro-
priated them to his own use the sureties on his bond are not
relieved from liability because the levy was illegally made."
Am. & Eng. Ency., vol. 24, 894; Mechem on Public Officers; Com.
for use, &c. v. Stockton, 5 T. B. Mon., 192.

(No other briefs in record.)

OPINION OF THE COURT BY JUDGE O'REAR.

Under provisions of the statute permitting counties to
acquire turnpike and gravel roads within their limits eith-
er by donation, purchase, or condemnation, the fiscal
court of Nicholas county, on June 25, 1897, contracted
with the Maysville & Lexington Turnpike-Road Company,
purchasing the latter's road within that county at the
agreed price of $23,000. At the previous November elec-
tion the question had been duly submitted to the voters
of the county whether they were in favor of free turn-
pike and gravel roads, resulting in a vote of 1,665 for to

483 against the proposition, which was duly canvassed
and certified.  Other roads had been acquired by the
county since the vote named, either by gift or purchase,
aggregating about 150 miles.  Prior to June, 1897, the
fiscal court had levied a tax rate of 34 cents on the $100
for county purposes for that year, but no part of it for
turnpikes or for their repair.  On June 25, 1897, the fiscal
court made an additional levy of 25 cents on the $100 for
turnpike purposes.  At the same time it contracted with
the Carlisle & Sharpsburg Turnpike-Road Company to ac-
quire its road at the price of $15,000.  It is claimed, how-
ever, that the court had, by the purchase of the Maysville
& Lexington road, exhausted the limit of indebtedness
which it could incur for that year, under section 157 of the
Constitution, and therefore the attempted contract with
the Sharpsburg road was void.  The order laying the
25-cent levy above named undertook to apply or apportion
it among the roads of the county.  Of this application,
$2,500 was attempted to be set apart for the Carlisle &
Sharpsburg Turnpike-Road Company in part payment of
the consideration for its road.  The sheriff, appellant S.
A. Ratliff, undertook the collection of these taxes, and
it is shown that he did collect them,—both levies.  There
was an issue as to the amount collected, but the appellant
is not questioning the finding of the lower court in fixing
the amount of the balance not before accounted for by
him, which was $7,605.20.  Appellee Aris Wiggins filed
an action in the Nicholas Circuit Court in April, 1898,
in the name of the Commonwealth of Kentucky for the use
of the said Aris Wiggins and all other taxpayers of
Nicholas county, and by said Aris Wiggins on behalf of
himself and all taxpayers of Nicholas county, in which

he set out the foregoing facts, substantially, adding that
he was a citizen of Nicholas county, and owned the legal
and equitable title to more than $10,000 worth of real
and personal property therein, which had been assessed
and was assessable for taxation therein, and that the
sheriff, Ratliff had proceeded to collect and had col-
lected from the 3,000 taxpayers of Nicholas county the
above-named tax (the said 25-cent levy), amounting, it was
alleged, to some $10,000; that the sheriff had collected it,
and the taxpayers had paid it, under a mutual mistake
of law and fact, each believing the levy was valid and that
they and their property were liable to pay it; that
the sheriff had asserted the whole tax as a lien against
their property, and would have distrained it but for their
payment. He brought the suit in equity on behalf of him-
self and the other 3,000 taxpayers of Nicholas county
to recover the whole of the tax represented by the 25-cent
levy, contending it was void. While this action was pend-
ing, appellant was ruled by the Nicholas court to settle
for the county levy collected by him for the year 1897,
and appointed a commissioner to make the settlement,
who reported, charging the sheriff with the taxes on the
total assessed valuation of the county, less exoneration
and delinquents, at the rate of 59 cents on the $100. From
this settlement the sheriff appealed to the circuit court,
and the proceeding was consolidated with the suit of
Wiggins, above named. The circuit court adjudged the
excess above 50 cents levied by the Fiscal Court of Nich-
olas county to be in violation of section 157 of the Con-
stitution, limiting the maximum tax rate for any one year
to 50 cents, and corrected the settlement to that extent,
and in some other minor particulars, remanding it to the

fiscal court.  That body adopted the judgment of the circuit court, and demanded of the sheriff the payment of the balance thus fixed, which he declined to pay; and the fiscal court ordered suit instituted upon his bond, which was done, and that suit also consolidated with the Wiggins suit.  When the court adjudged the 9 cents excess void, Wiggins, on behalf of himself and all other taxpayers of Nicholas county, instituted an action in the Nicholas Circuit Court against appellant Ratliff, sheriff, and appellants H. Whaley, W. B. Ratliff and Waller Sharp as sureties on his official bond, to recover of them the tax illegally collected and withheld by the sheriff.  This last-named suit was heard and adjudged, resulting in a judgment in favor of the plaintiffs, and the sheriff and his sureties have prosecuted this appeal.  The sheriff has also prosecuted appeals from the judgment declaring only the 9 cents of the 25-cent levy void, and from the judgments of the circuit court requiring him to pay to Nicholas county the balance found in his hands of the 16 cents that was held to be valid.  His sureties have appealed from the judgments making them liable for any part of the tax collected.  Wiggins prays a cross appeal because the whole of the 25-cent levy was not adjudged void.  Their cases have been ordered heard together, and are so determined.

Numerous questions of practice and matters of law are urged, many of them not sufficiently material, in our opinion, to warrant reversal if we should concur that they were indeed errors.  Those questions of a more serious nature we will state and dispose of in their order: (1) The right of Wiggins to maintain this action.  (2) Wheth-

162          KENTUCKY REPORTS.          [Vol. 110

Whaley and Others v. Commonwealth.  Ratliff, Sheriff v. Same, and
Same v. Nicholas County.  (Three cases heard together.)

er the lower court adopted a correct method in directing
its master commissioner to ascertain the names of all
persons who had paid taxes for the year 1897, and the
amounts so paid by them, respectively, and that nine
fifty-ninths of the sum so paid by each of them should
be reported as the basis of a final distribution.  (3) Was
the 25-cent levy void in toto, or only the 9 cents in excess
of the 50-cent limit?  (4) Was the sheriff and the sureties
of his official bond liable for these taxes so collected
by him?  (5) Was the money collected by the sheriff in ex-
cess of the constitutional limitation a liability embraced
by the terms of his bond, for which his sureties were
liable?  (6) Was the sheriff or his sureties liable for such
excess collected by a deputy of the sheriff, and not paid to
the principal by the deputy?  In addition to the above,
appellee Wiggins raised these questions on his cross ap-
peal: (7) He claims interest should have been allowed on
the judgment in favor of the taxpayers from May, 1898,
when the sheriff's answer was due, and when appellee
contends he should have tendered the money into court.
(8) That the $2,500 appropriated to the Carlisle & Sharps-
burg Turnpike Road Company was void, and the collection
of any part of the 25-cent levy, even within the 50-cent
limit was void.  (9) That the sheriff, being but a bailee,
could not in any event prosecute this appeal, because no
substantial right of his is determined or affected.  The
court has merely adjudged which of two contending claim-
ants is entitled to the fund which he holds for the right-
ful claimant.

1. In Blair v. Turnpike Co., 67 Ky., 157, this court held
that a sheriff holds the money collected by illegal taxa-
tion on a void subscription to turnpikes as a trust fund for

the benefit of taxpayers who contribute that fund.  Sec-
tion 25 of the Civil Code of Practice provides:  "If the
question involve a common or general interest of many
persons, or if the parties be numerous and it is impractic-
able to bring all of them before the court within a rea-
sonable time, one or more may sue or defend for the ben-
efit of all."   Before the adoption of the Code in Kentucky
a similar practice was indulged as a part of equity juris-
prudence, and in line with like practice in other jurisdic-
tions where the common law prevailed.   To prevent a
multiplicity of suits where one might settle the question
at issue and grant complete relief to all interested,
courts of equity have long entertained a suit at the in-
stance of one or more of the class affected, suing for all.
At one time it was thought, and to some extent it was
held, that the rule above noted did not embrace actions
by a taxpayer to restrain the collection of or to recover
illegal taxes imposed.   The reason urged was that there
was not a common title, or such identity of interests as
so connected the interest of one with all the others as to
bring them within the rule; it being argued that each
taxpayer's cause of action was complete in itself, and
could be maintained or defended without reference to the
presence of other taxpayers, and that frequently, and in-
deed generally, separate defenses would be required to
the claim of each, and in event of a judgment in their
favor separate recoveries must be adjudged them.   The
modern tendency has been, though, to extend the rule,
codified in the language of section 25, *supra,* so as to in-
clude the class of cases to which this one belongs.   From
the authorities, and from the weight of the best reason-
ing defining the principle governing this practice, we

find that, where the individual taxpayer may maintain an
action at law to recover back the illegal tax which he
has paid, all the reasons for exercising the jurisdiction
to prevent a multiplicity of suits apply.  Although each
taxpayer has a remedy by action at law, it is manifestly
inadequate and imperfect, and often nominal.  By means
of the equitable jurisdiction the whole controversy and
the rights of each individual taxpayer can be fully deter-
mined in one judicial proceeding by one judicial decree.
Such questions involve, we may say, public or community
rights; and a practical, speedy, expedient, and, so far as
may be possible, inexpensive, method should be provided
for their settlement.  This we think was fairly within the
contemplated meaning of section 25, *supra*.  These con-
clusions, we think, are fully sustained by Pom. Eq. Jur.,
section 270; Cooley, Tax'n, p. 769; Road Co. v. Thomas
(Ky.) 3 S. W., 907; and Com. v. Tilton (Ky.) 54 S. W., 11.

2. It follows from the foregoing that the circuit court
proceeded properly in having its master commissioner
ascertain the names of all persons in the county who had
paid any part of the tax in question, and to report what
part decided to have been illegally assessed and collected
each one paid, as the basis of a final decree in the action.
The tax books in the possession of the sheriff being pub-
lic records (section 4138, Kentucky Statutes), it was prop-
er that the commissioner should have recourse to them,
as the most accessible and best evidence of the amounts
assessed to and paid by each person.  The objection that
these books were not filed in this record is not well taken,
because by law they are required to remain among the
records of the sheriff's office.  If any item of the com-
missioner's report is questioned, the sheriff was compe-

Whaley and Others v. Commonwealth.  Ratliff, Sheriff v. Same, and
Same v. Nicholas County.  (Three cases heard together.)

tent as a witness to testify concerning the books, and
certainly could not have been misled or injured by his hav-
ing their custody, instead of the commissioner.

3. It is argued for the taxpayers that as the Constitu-
tion prohibits the levy of any tax rate in one year, in a
county of which Nicholas is of a class, of more than 50
cents on the $100, the levy of 25 cents, when 34 cents had
been previously levied, was void; that it being one sum,
and not separable, the whole of that levy was void.  The
general rule on this subject is, if the legal tax or an illegal
item embraced in the levy be separable from the remain
der, that which is above the legal limit will be void, while
that within will be upheld.  Many eminent authorities
may be cited to support this doctrine.  In this State,
in Levi v. City of Louisville, 97 Ky., 394, (30 S. W., 973),
(28 L. R. A., 480), this principle was recognized in the fol-
lowing statement:  "The legal part of this levy can be sep
arated from the illegal, and the omission to assess cer
tain personal estate in the proper mode will not render
the entire ordinance inoperative.  1 Desty, Tax'n, 468."
Nicholas county having adopted the free-turnpike sys-
tem, its fiscal court was authorized to levy as much as
25 cents on the $100 for road and bridge purposes each
year, provided the total levy for the year did not exceed
50 cents on the $100.  That court was the sole judge of
the necessity of the levy, and of the manner in which it
should be applied upon its roads.  If it went beyond the
constitutional restriction, only that part that is without
the court's power is contrary to the law.  In Mix v. Peo-
ple, 72 Ill., 242, this principle is tersely discussed, the
court saying in part:  "It is also insisted that even if the
levy was made, it being in excess of the per cent. allowed

by the Constitution, the entire levy is void.   The eighth
section of article 9 provides that the 'county authorities
shall never assess taxes the aggregate of which shall ex-
ceed 75 cents per $100 valuation, except for the payment
of indebtedness existing at the adoption of this Constitu-
tion, unless authorized by a vote of the people of the
county.'   This provision renders all this tax void which
is in excess of the constitutional limit; but the books
abound in cases which hold that, in the exercise of a pow-
er, any excessive action beyond the power will
not vitiate acts within the power, where the acts
well performed can be separated from those that
are not authorized.   Here there can be no ques-
tion that 75 cents on the $100 valuation was fully war-
ranted, and that sum can be readily separated from the
illegal and unauthorized sum levied in excess of that
amount.   It requires but a simple calculation to make
the separation with precision.   In such cases this court has
uniformly held that the tax levied within the limit of the
power will be sustained when it can be separated from
the portion that is illegal.   O'Kane v. Treat, 25 Ill., 557;
Briscoe v. Allison, 43 Ill., 291; State v. Allan, Id., 456;
Allen v. Railroad Co., 44 Ill., 85; People v. Nichols, 49
Ill., 517.   "It has been so repeatedly held that an illegal
levy of tax does not vitiate or affect the portion legally
levied, when the two can be separated, that the question
must be regarded as settled, and we must decline its
further discussion.   The court below did not, therefore,
err in separating the legal portion of the levy for county
purposes from the illegal, and in rendering judgment for
the portion authorized by law."   This court, in Daviess
Co. Ct. v. Howard, 13 Bush, 101, held that bonds issued

in excess of authority conferred by law were void to the
extent of the excess only.  That view, upon appeal to the
United States Supreme Court, was affirmed.  Daviess Co.
v. Dickinson, 117 U. S., 657-665, (6 Sup. Ct., 897), (29 L. Ed.,
1026).  We are of opinion that the tax levy of June 25,
1897, was valid to the extent of 16 cents, and void as to
the remaining 9 cents; that it was separable, because only
nine fifty-ninths of the total levy for that year being void,
it was a matter of simple calculation to determine and
eliminate the illegal part.  This process is criticised be-
cause it is said a part of the 16 cents was appropriated
to the payment of $2,500 to the Carlisle & Sharpsburg
road, which it is alleged was void.  Even if the appro-
priation to the Carlisle & Sharpsburg road was void, but
a small fraction of the 50-cent levy would be involved in
it; and as the fiscal court had the right to use the valid
part of this 25-cent levy in payment of its road expenses,
this surplus might be so appropriated.  In Field v. Stroube,
103 Ky.,114; 19 R., 1751 (44 S. W.,363), we held that, where a
surplus remains after the object to be obtained by a particu-
lar levy has been accomplished, such surplus might be appro-
priated by the county, even for general purposes, and that
such appropriation was not prohibited by section 180 of the
Constitution.  Such a construction is necessary, because it is
impossible to fix accurately a tax rate to meet exactly a
liability.  Exonerations, delinquencies, or miscalculation,
decrease or increase of valuation by supervisors or boards
of equalization, and other unforeseen circumstances, will,
in every probability, produce either a surplus or deficit
of tax; and, if a surplus, to hold that it could never be
used for any purpose, except that for which it was
specifically levied, would tend to, in time, lay up a public

168        KENTUCKY REPORTS,        [Vol. 110

Whaley and Others v. Commonwealth. Ratliff, Sheriff v. Same, and
Same v. Nicholas County.   (Three cases heard together.)

fund entirely unavailable for any public purpose. A con-
struction leading to such an absurd result will be repudi-
ated as not having been within the contemplation of the
framers of the Constitution.

4. The pleadings show that these actions were based
upon the sheriff's official bond, required of him by section
4133, Kentucky Statutes. It is not stated that the sheriff
executed the county-levy bond provided for in section
1884 of the statutes. The sureties in the official bond
might have pleaded the fact of such execution, if it had
been a fact, when the actions would have been upon the
last-named bond. Lyons v. Breckinridge Co. Ct., 101 Ky., 715;
19 R., 951; 42 S. W., 748. But if the county-levy bond was not
executed the actions might be upon the official bond. We
so held in Howard v. Com., 105 Ky., 604; 20 R., 1411 (49 S.
W., 466), followed in Pulaski Co. v. Watson, 106 Ky., 500; 21
R., 61 (50 S. W., 861), and Catron v. Com., 52 S. W., 929.

5. It follows from what has been said that the sureties
upon the official bond of the sheriff were liable to Nicholas
county for the 16 cents of the 25-cent levy made June
25, 1897. But, in our opinion, they were not liable to any
one for the excess. Their liability is measured by the
terms of their bond alone. They engage that their prin-
cipal shall perform every act which the law required of
him as such official to perform, and that, if he fails to
do that which he is required by law to do in the discharge
of his official duties, they will answer for such default.
Hawkins v. Com., 17 Ky., 146, was an action upon a sher-
iff's bond, alleging as breach of its covenants his failure
to make or pay over to the plaintiff certain funds repre-
sented by the attachments in the sheriff's hands for dis-
traint. It appeared that the writs of attachment were

void.   Said the court: "If, therefore, each of the attach-
ments is void, it follows that neither of the assignments
of breaches shows any breach of the condition of the sher-
iff's official bond.  Though received by the deputy, if void
the attachments conferred no authority upon the deputy;
and, of course, the plaintiff in the attachments can have
no cause of complaint against the sheriff for the failure
of the deputy to levy and return the attachments.   Nor
is the sheriff liable if, as alleged, the deputy received
from the person against whom the attachment issued
the amount thereof, and failed to pay the same to the
plaintiff in the attachments; for, having received the mon-
ey under void process, the deputy must be considered
as holding it for the use of the plaintiff, in whose favor
the process issued, not in his official capacity, but as a
private individual; and it is to him, and not to the prin-
cipal sheriff, the plaintiff must have recourse for indem-
nity."   Hammond v. Crawford, 72 Ky., 76, was an action
upon the bond of a county school commissioner for money
drawn from the treasury, by virtue of his office, for the
school districts of his county, and not paid over.   The
money appears to have been drawn by the commissioner
without the certificate required of him by law.   Said the
court: "The certificate of the superintendent is required
as a precautionary measure to protect the treasury from
imposition.   But the sureties of a commissioner are not
responsible for money drawn from the treasury by him,
unless it is drawn according to law; and, in an action
against them as sureties, the petition should contain a
statement of every fact necessary to show that the audi-
tor had the authority to draw his warrant on the treas-
urer for the amount drawn by the commissioner."   Grif-

fith v. Com., 73 Ky., 281, was an action on a sheriff's bond,
alleging as a breach his failure to pay to the plaintiff cer-
tain fee bills listed with the sheriff by the plaintiff for
collection, and which he had collected, but failed to pay
over on demand. The statute made it the duty of the
sheriff to receive and collect certain fee bills, which were
by law distrainable. The record failing to show that the
fee bills in question could have been legally distrained
for the sureties were held not liable, the court using this
expression: "The sheriff would be individually liable on
his covenant to collect and account for the fee bills which
he acknowledged he had received, but his sureties are
not. They can only be made liable for money collected
on writs and process which the law makes it his duty
to take and collect." In Greenwell v. Com., 78 Ky., 320,
the railroad tax provided by law to be levied in certain dis-
tricts of Nelson county for the year 1878 had been omitted
from the tax levy as fixed by the county court order. The
sheriff proceeded to collect and did collect it. Failing
to pay it over, action was instituted against his sureties
on his bond. In denying recovery of the sureties, this
court said: "It is true that appellants voluntarily exe-
cuted the bond as the sureties of the sheriff, and by so
doing made themselves liable for any of his official de-
falcations; but here they are proceeded against, not on
account of the failure of the sheriff to do what the law
required of him, but for failure to do what the law did
not require or exact of him and his sureties. . . . Be-
fore these sureties can be made liable for this tax, it must
appear that the sheriff has failed to discharge some duty
imposed on him by law with reference to its collection."
Dawson v. Lee, 83 Ky., 55, is to the effect that, where the

sheriff collects an unconstitutional tax, no such liability
attaches therefor to his sureties, that if they pay it off,
in supposed discharge of their liability on his bond, they
could be subrogated to the rights of the State. The
court held his bond not to cover such supposed liability
to the State.  In Osenton's Adm'x v. Burnett, 19 R., 610, 41 S.
W., 270, this court again and lately said: "The liability of the
obligors in an official bond is measured by its terms.
. . . If the [tax] collector collected more than was
sufficient for that purpose, or might have done so with
a reasonable effort, he may be liable to the county; but
not so with his sureties." No act which is prohibited
by the Constitution can ever become a duty. Every act,
whether of the Legislature, of the judiciary, or of the
executive branch of government, in violation of the terms
of that instrument, is void *ab initio*. It is the duty of an
officer charged with the execution of an act to know
whether it is within the Constitution, and, if he have
doubts, to refrain from doing it, says Judge Cooley in his
Constitutional Limitations (page 88). The fiscal court be-
ing prohibited from levying the 9 cents in question, its
action was void; and, of necessity, so was every other act
thereafter of whomsoever attempting to enforce it. Con-
sequently it was not the duty of the sheriff to collect it,
and therefore it is not covered by the undertakings of
his sureties in his bond.

6. Upon the authority of Hawkins v. Com., 17 Ky.; 146,
cited above, as well as because of the conclusions above
set out, neither the sheriff nor his sureties were liable
for that part of the unconstitutional tax collected by
the deputy, Sparks, and not paid over to the sheriff. That
is a personal and individual liability of Sparks to the
taxpayers.

7. Until the settlement was completed, and the amount
due by the sheriff was properly ascertained, interest
should not have been charged; and the circuit court prop-
erly fixed the date in accordance with this view.

8. The question now recurs, was the contract made by
Nicholas county with the Carlisle & Sharpsburg road,
herein before adverted to, beyond the constitutional limit
of indebtedness allowed to be contracted by the county?
It will be remembered that Nicholas county had bought
other roads, costing some $23,000, and this one of $15,000,
making $38,000 for that year. The taxable property of
Nicholas county was $3,938,544, and about 3,100 tithes for
the year 1897. Section 157 of the Constitution provides
as follows: ".   .   .   No county, city, town, taxing dis-
trict, or any other municipality shall be authorized or per-
mitted to become indebted in any manner, or for any pur-
pose, to an amount exceeding, in any year, the income
and revenue provided for such year, without the assent
of two-thirds of the voters thereof, voting at an election
to be held for that purpose; and any indebtedness con-
tracted in violation of this statute shall be void." An
other clause of the section fixes the maximum rate of taxes
to be levied by the county under the conditions admittedly
existing in Nicholas county at 50 cents on the $100. It
will thus be seen that the revenues and income of the
county for that year were not and could not have been
sufficient to meet that indebtedness. The record discloses
that the proposition had been regularly and legally sub-
mitted at the November election in 1896 whether the
county should avail itself of the provisions of the free-
turnpike statute; that is, whether the county would adopt
the system of free turnpikes in the county, instead of the

toll system then in vogue.   The record also discloses that
there were something over 150 miles of turnpike roads,
in the county, most or all of them held and operated by
private ownership.   It necessarily followed that to adopt
the free-turnpike system meant to buy or condemn many
or all of these roads, and to do either involved the county's
assuming the corresponding financial liability represented
by their fair value.   A vote, therefore, in favor of the
proposition necessarily was a vote in favor of incurring
the necessary indebtedness to enable the county to carry
into effect the voter's will and mandate.   And when 1,665
of the voters voting at the election called and held for that
purpose voted in favor of the proposition, as against the
483 who opposed it, the requisite two-thirds majority
had fairly and sufficiently expressed themselves in favor
of incurring the indebtedness.   If the proposition submit-
ted to the voter and printed on the ballot had been, "Are
you in favor of free turnpikes, and of incurring for the
county such debt as may be legally necessary to pay for
the turnpikes now owned and operated in the county
by private owners?" and if the majority voting in the
affirmative had been as shown by this record, no one
would have questioned that the result was a fulfillment
of the constitutional requirement.   The question submit-
ted, "Are you in favor of free turnpikes and gravel roads?"
involved fairly and fully the question of necessary in-
debtedness to pay for them.   No other means were pos-
sibly available, save the creation of a present indebted-
ness to be met by future taxation.  The court must in-
dulge the presumption that the voters of Nicholas county
both knew and intended the construction herein given the
proposition.   To deny it is to question in the first place

Whaley and Others v. Commonwealth. Ratliff, Sheriff v. Same, and
Same v. Nicholas County. (Three cases heard together.)

their common understanding, as not knowing the necessary and legal results of their action; and in the next place it would be to question their honesty or fair purpose to pay for the roads they were voting to acquire, and which by their votes they were authorizing and directing their fiscal representatives to acquire for their use and in their name. The views, apparently in conflict with this opinion, expressed in Road Co. v. Wiggins (Ky.) 47 S. W., 434, seem to have been in response to argument, and, because not necessarily involved in the record then under consideration, merely dicta, and not binding on this court.

9. The sheriff had such interest in the result of these litigations as to entitle him to appeal from the judgments against him.

It follows that the judgments in favor of Nicholas county are each affirmed. The judgment in favor of the Commonwealth of Kentucky, for use of Aris Wiggins and other taxpayers, against S. A. Ratliff, is reversed in so far as it adjudges against Ratliff any part of the illegal tax collected by his deputy, Sparks, and not paid over to Ratliff, and affrmed in all other respects. The judgment in the case of Wiggins, for the use of the taxpayers, against Whaley and others, the sheriff's sureties, is reversed. The judgment on the cross appeal of Wiggins for himself and others is affirmed. In so far as these causes are reversed, they are remanded for proceedings consistent herewith.

Judges Guffy and DuRelle dissent from that part of the opinion holding the incurring of the obligation for the Carlisle & Sharpsburg road a legal liability against the county. Judges Guffy, DuRelle and White dissent from the

views of the opinion holding the sureties not liable for that part of the tax collected by the sheriff and his deputy, held herein to have been in violation of the Constitution.

Petition for rehearing by both parties overruled.