**AMERICAN SURETY CO. OF NEW YORK v. CITY OF WINCHESTER et al.**

**CITY OF WINCHESTER v. AMERICAN SURETY CO. OF NEW YORK.**

Circuit Court of Appeals, Sixth Circuit. November 19, 1929.

Nos. 5178, 5180.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge. This action was originally brought in equity by the American Surety Company of New York against one C. B. Strother, formerly city treasurer of Winchester, Ky., a city of the fourth class, to procure exoneration under the official bond of said Strother, which was executed by the American Surety Company as surety. The city of Winchester was made a party defendant and filed a cross-bill praying that the surety be required to make good certain defalcations on the part of Strother as city treasurer. The appeal and cross-appeal involve solely the question of liability of the surety for such defalcations under the law of Kentucky governing the extent of liability upon official bonds.

All of the funds misappropriated by the city treasurer were purported collections upon street assessments. The right of cities of the fourth class in Kentucky to make street improvements and to assess the costs thereof against abutting property owners and the procedure to be adopted in issuing bonds and collecting the assessments, are governed by sections 3560 to 3577, inclusive, of the Kentucky Statutes. It is conceded to be the law of the state of Kentucky that the surety upon the bond of a public official, conditioned that he shall well and truly discharge the duties of his office and pay over to such persons as may be respectively entitled thereto, all money that may come into his hands as such officer, is liable as to such money only as it was made by statute the duty of the officer to collect or receive in his official capacity—not such as he may have received under color of office but which the statutory law did not authorize him to receive.[1] The only question presented by the present record therefore is whether the treasurer of Winchester was authorized or re-

Moorman, Circuit Judge, dissenting.

W. Pratt Dale, of Louisville, Ky., for American Surety Co.

B. R. Jouett and M. C. Redwine, both of Winchester, Ky. (John T. Metcalf, of Winchester, Ky., on the brief), for City of Winchester.

[1] Hardin's Executors v. Carrico, 3 Metc. (Ky.) 289; Hammond v. Crawford, 9 Bush (Ky.) 75; Griffith v. Commonwealth, 10 Bush (Ky.) 281; Greenwell v. Commonwealth, 78 Ky. 320; Duncan v. Smith's Guardian, 15 Ky. Law Rep. 58; Osenton's Adm'x v. Burnett, 41 S. W. 270, 19 Ky. Law Rep. 610; Commonwealth v. Stone, 114 Ky. 511, 71 S. W. 428; Whaley v. Commonwealth, 110 Ky. 154, 61 S. W. 35; American Bonding & Tr. Co. v. Blount, 65 S. W. 806, 23 Ky. Law Rep. 1632; Commonwealth v. Bacon, 111 S. W. 387, 33 Ky. Law Rep. 935; Clark v. Logan County, 138 Ky. 676, 128 S. W. 1079; Elliott v. Commonwealth, 144 Ky. 335, 138 S. W. 300; Equitable Surety Co. v. Newport, 194 Ky. 363, 238 S. W. 1046.

In each of the above cases the surety on the bond of the public official was held not to be liable for money collected where the law did not impose upon the official the duty of making the collection.

quired under the circumstances of this case to receive or collect the assessments wrongfully appropriated by him.

By section 3563 of the Kentucky Statutes, above cited, the board of council of a city of the fourth class is authorized to make improvement of any public way and to assess the cost thereof upon the abutting property. This section further provides that this "tax shall be due and payable at the city treasurer's office upon the completion of the work and acceptance thereof by the board of council, unless otherwise provided in the ordinance ordering such improvement. * * * " Section 3575 then provides that the board of council may make such assessments upon the 10-year payment plan. Notice is required to be given all persons to pay the local taxes levied upon their property within 30 days from the publication of the ordinance accepting the work and assessing the cost thereof but "such local taxes may, at the option of the property owners, be payable in cash, without interest, within thirty days, or in ten annual installments as herein provided." If any property owner desires to exercise such privilege of payment by installment, he "shall, before the expiration of the said thirty days, enter into an agreement in writing with the city that in consideration of such privilege he will make no objection to any illegality or irregularity with regard to the taxes against his property, and that he will pay the same in the manner herein provided, with specified interest." This section further provides that such agreement shall be filed in the office of the city treasurer, who shall file, retain and record the same as a record in his office. Lastly, "in all cases where such agreements have not been filed within the time limited the entire tax shall be payable in cash without interest before the expiration of said thirty days."

Where the option to pay in installments has been properly exercised, one-tenth of the principal amount of the tax is payable annually and interest upon the unpaid balance of such tax, from time to time, is payable semiannually. All installments and interest are required to be placed upon the tax duplicate with other taxes of the persons liable for such special assessments over the period of ten years; "provided, that any person may, at any interest-paying period after the fifth annual installment of his tax becomes due, pay the entire assessment of tax against his property with accrued interest." It is the duty of the city treasurer to collect municipal taxes and section 3575 specifically provides that "it shall be the duty of the treasurer, up-

on order of the board of council, to promptly apply all money paid in on such installments to the payment of bonds and coupons which may be issued as provided in the next section in anticipation of the collection of such local taxes."

Failure on the part of the city to collect any such local tax or installment when due, however, creates no liability against such city, but the owner of the bonds or the person entitled to such tax shall have the right to proceed in any court of competent jurisdiction to foreclose the lien for such unpaid assessments. The city is therefore not primarily liable upon the assessment bonds, but is made the collection agency for the holders of the bonds. In the event of nonpayment of any bond at maturity, the bondholder may in his own name maintain an action to foreclose the lien created by statute.

After the completion of the improvements in question and the acceptance by the board of council, but without full compliance with the statutory provisions as to the execution of 10-year payment plan agreements, hereinafter referred to as waivers, the board of council enacted an ordinance authorizing the adoption of the 10-year payment plan. Thereafter all taxpayers whose payments are here involved made one or more of the annual payments but all less than five of such payments. In this situation Strother induced numerous of such taxpayers to pay to him their entire remaining indebtedness by offering to remit interest then accrued or unaccrued. Such taxpayers who are involved in this litigation fall into one of three distinct classes: (1) Taxpayers who had executed agreements or waivers prior to the issuance of the bonds but more than thirty days after the completion of the work; (2) taxpayers who had executed agreements or waivers prior to the issuance of the bonds and within thirty days after the completion of the work; and (3) taxpayers who had made one or more annual installment payments but where no agreements or waivers could be found by the city of Winchester.

Those in the first and third classes are involved in the appeal of the surety; those in the second class in the cross-appeal of the city. The District Judge held that, where agreements or waivers purporting to have been signed within the thirty days were found upon the files of the city, there was no authority vested in the city treasurer to accept full payment prior to the fifth annual installment of the tax becoming due. The correctness of this ruling is questioned by the cross-appeal. The District Judge further held

that, where waivers were not filed within the thirty days as provided by statute, or where such waivers could not be found on file as required by statute, there had been an invalid attempt to put into effect the 10-year payment plan and that all such taxes were thereafter continuously due under the provisions of sections 3563 and 3575, above quoted, that it was thereupon the duty of the city treasurer to collect such assessments, and that the surety upon his official bond was liable in the event the treasurer made such collections and failed properly to account for and apply the same. We deal first with the question of those taxpayers who had failed to file agreements or waivers within the 30 days or as to whom no waivers were found or proved.

It is the contention of the surety that the city, the bondholders, and the taxpayers are all now estopped by the giving and acceptance of waivers after the 30 days, the purchase of the bonds, the payment and receipt of one or more installments of principal and interest, and general acquiescence in the position that the waivers were filed in full compliance with the statutes, to assert the invalidity or ineffectiveness of such waivers or any irregularity in putting into effect the 10-year payment plan. In support of this position, the surety relies principally upon the case of City of Lexington v. Bowman, 119 Ky. 840, 84 S. W. 1161, 85 S. W. 1191.

The facts of the case relied upon were these: The city of Lexington was authorized by Act of the General Assembly to improve the city streets and to assess a fixed portion of such improvement against the abutting property owners. As an alternative mode of payment for the improvement the city was authorized "at the request of parties liable for special taxes levied" (Laws 1899–90, Ky., c. 902, § 3), to permit the entire cost to be paid in ten annual installments. The city made an improvement and passed an ordinance reciting that all property owners had petitioned to have the improvement made upon the 10-year plan. Bowman paid the first and second of the ten installments but refused to pay the remainder, and subsequently filed his suit to enjoin collection on the ground that the proceedings of council were void as to his property, for the reason that he did not request the city to loan him credit for 10 years or to put into effect the 10-year payment plan. The city was unable to produce any such request. However, the Court of Appeals of Kentucky held that the taxpayer was estopped by his inaction at the time and by his payment of the two installments, to thereafter deny his indebtedness or that he

had, as recited in the ordinance, made request for adoption of the 10-year plan.

It will thus be seen that this case is not precisely in point, for the taxpayer was there denying all indebtedness, while here such indebtedness is conceded. The question is here presented whether the city treasurer is authorized to accept payment of the entire assessment when waivers have been irregularly filed and this question did not enter into the decision of the Bowman Case. The case is not controlling, although it presents a logical appeal in so far as it suggests estoppel on the part of the taxpayer, here the real party in interest, to assert that all requirements of the statute are not fully complied with. Manifestly, if the present action were a suit upon the bonds in the hands of innocent purchasers, the situation would be a complete parallel and the case controlling. As against a bona fide bondholder, the taxpayer could not plead payment in advance of the due date of the fifth installment. But, while this estoppel might operate as on behalf of a bondholder who might thus have been misled to his prejudice by the acquiescence of the taxpayer, it does not of necessity operate on behalf of the surety who made no expenditure and assumed no liability on the faith of the validity of the waivers; nor is the case decisive of the question of the authority of the treasurer to collect these assessments irregularly enacted, the taxpayer being willing.

The statutes of Kentucky specifically provide that all such assessments shall be payable in cash, without interest, in 30 days, or that the property owner may exercise the option of paying them in ten installments if, but only if, certain definite procedure is followed. Such procedure has not been followed. The rights of the bondholders are not here involved, and the rights of the taxpayer are only collaterally involved to the extent that he might be required to duplicate such a payment under compulsion of suit by the bondholder. It is independently made the duty of the treasurer promptly to apply "all money paid in on such installments" to the payment of bonds and coupons. There is no question that the sums received by the treasurer were liquidated, assessed, and owing. The only question is whether they were due. Upon careful consideration, we are constrained to approve the holding of the District Court that the assessments became due in full at the end of the critical 30-day period upon the failure of the taxpayer to comply with the statute as to filing waivers; that at that moment the treasurer might have made collection; that there is nothing in the statu-

tory law of Kentucky authorizing the board of council to thereafter postpone such maturity of obligations, or to enact a valid 10-year payment plan ordinance; and that, whatever might be the situation in an action between taxpayer and bondholder, or the rights of the treasurer as against an unwilling taxpayer, the city treasurer was thereafter authorized and empowered to receive payment of the assessments from willing taxpayers of the first and third classes above enumerated, and obligated to make such collections from any unobjecting taxpayers. It follows that the collection of the misappropriated funds was made pursuant to statutory authority and official duty and thus falls within the protection of the bond.

The city of Winchester contends that liability also exists as to the taxpayers of the second class above enumerated, who had filed waivers within the 30 days, or as to whom waivers dated within the 30 days were found, because it was established by the evidence that some of such waivers, unidentified, were taken after the expiration of the 30 days and because none of such waivers is marked "Filed" by the treasurer, dated upon receipt, or recorded as provided by statute. It is contended that the burden is upon the surety to affirmatively show strict compliance with the statutory provisions in order to avoid liability.

We are of the opinion that, inasmuch as the statutes specifically provide that one filing waivers, and thus putting into effect the 10-year payment plan, may pay the entire balance of the assessment "after the fifth annual installment of his tax becomes due," the absence of a similar right prior to the due date of the fifth installment must of necessity be implied. We are further of the opinion that, as the taxpayer himself might and should have dated his waivers when executed, he cannot now complain that they are incorrectly dated nor of the possibility of double payment, nor can any one paternally in his interest. But the taxpayer is not responsible for the due performance by city officials of their ministerial duties after the waivers have been lodged, or at least in so far as putting into effect the optional installment plan is concerned, and the finding of such waivers, dated within the 30 days and on file in the office of the treasurer, makes out a prima facie case of compliance with the law. As to taxpayers of the second class, the 10-year installment plan must be held to have been in effect and the collection of installments not yet due, prior to the due date of the fifth installment, must be held as beyond the authority and official duty of the treasurer and thus as not covered by the bond.

There was an item of $507.75 included in the judgment as to which the evidence was peculiarly unsatisfactory. The city treasurer was the only witness called to prove such payments which were specifically excluded from the stipulation. His testimony was to the effect that he knew the individuals named had paid him something, but he did not remember the dates or amounts. The individuals themselves were not classified as definitely within any of the classes above enumerated nor does it affirmatively appear whether the amounts paid were then due or future installments. Although the burden may rest upon the surety to show irregularity in payment or receipt, the burden unquestionably rested upon the city to establish the fact of payment and its intended purpose. This could have been done by calling the individuals or in most instances by some form of record evidence. In the absence of such evidence, we are of the opinion that this item was improperly included as unsupported by the record. To this extent the judgment of the court below was erroneous.

Such judgment will be modified to that extent, and, as modified, will be affirmed.

MOORMAN, Circuit Judge (dissenting). I cannot concur in the holding that appellant is liable for the money paid to the city treasurer by the property holders who filed waivers more than 30 days after the publication of the ordinance. The tax assessment was a liability of the property holders to the contractor; the city was neither liable for nor received any part of it. The bonds issued therefor are not, therefore, to be tested by the strict application of statutory authority that ordinarily determines the right of a city to pledge its credit. The city, the property holders, and the contractor knew that these waivers were filed more than 30 days after the publication of the ordinance. The city, acting upon them at the instance of the property holders, caused bonds to be issued, and the contractor accepted them in lieu of the payments then due. The result was there was an agreement between the interested parties, the contractor and the property holder, to waive the 30-day provision of the statute. There were considerations passing both ways for such an agreement. The contractor gave up the 10 per cent. penalty with interest which the property holder would have had to pay, and the latter, by filing a waiver, renounced his right to contest the validity of the tax. I see no reason why, by agreement

based upon these substantial considerations, the interested parties could not make the statute just as effective as if the 30-day provision had been complied with. If, however, they could not so far waive the provision as to make the statute controlling per se, they at least could agree upon such due dates and terms of payment as they chose. The statute did not prohibit them from doing this. They were debtor and creditor, and, even if the tax was then due, they could agree upon another date for payment if they wanted to. That was what they did, fixing the due dates in the bonds, and, having done so, the tax, in my opinion, did not thereafter become due until the dates agreed upon. If it was not due, as I think, then the property holder could not pay it without the consent of the creditor, the bondholder, just as the other property holders could not pay their bonds before their due dates without the consent of their creditors; and in neither case could the city treasurer in my opinion give the consent for the creditor.