# Falls City Construction Company v. Fiscal Court of Wolfe County.

### (Decided November 4, 1914.)

## Appeal from Wolfe Circuit Court.

1.  Counties—Indebtedness—Constitutional Law.—Section 157 of the Constitution, which prevents a county from becoming indebted in any year, to an amount exceeding the income and revenue provided for that year, without the assent of two-thirds of the voters thereof, does not prohibit the county from spending the surplus revenue on hand, although the county may be then in debt to an amount exceeding the revenue on hand.

2.  Counties—Indebtedness.—To the extent that there was money on hand or assets available for the purpose in view, there was no creation of any debt prohibited by section 157 of the Constitution, but only an appropriation of cash or assets on hand.

3.  Counties—Levy of Tax to Build Court House.—For the purpose of erecting a court house, the county may raise a fund by the sale of bonds, provided authority to issue same be obtained by the assent of two-thirds of the voters of the county voting at an election for determining whether the indebtedness shall be incurred; or, by levying and collecting a tax in each year and deferring further work on the building until a fund is thus raised to complete it; or, by doing the work by piece-meal, contracting each year for the work done in such year, and levying in each year a tax within the constitutional limit to pay for the work done on the building in that year.

4.  Contracts—Breach.—Where promises are divisible, that is, where the contract contains a number of promises to do a number of similar acts, a breach of one of them does not discharge the other party.

5.  Contracts—Divisible Contract—Validity.—If one provision of a divisible contract is valid, it will be enforced, although some other provision thereof be invalid.

CHARLES CARROLL and M. M. LOGAN for appellant.

S. MONROE NICKELL, G. C. ALLEN and IRA M. NICKELL for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing upon the original appeal and affirming upon the cross-appeal.

In May, 1913, the court house of Wolfe County, situated at Campton, was totally destroyed by fire. It was insured for $6,000.00, which sum was promptly paid and deposited to the credit of the county.

The fiscal court having appointed a building committee, consisting of S. P. Howe, J. C. Lindon and J. S. Miller, to make a contract for the building of a new court house, the committee, acting upon behalf of Wolfe County and its fiscal court, made a contract on July 18, 1913, with the appellant, the Falls City Construction Company, by which that company agreed to build a specified part of the court house, known in the record as "Stage A," for the sum of $6,000.00, in cash. Stage A included the foundation and exterior walls of the court house up to the first story window sills, exclusive of the portico.

The contract further provided that this $6,000.00 was to be paid to the contractor by the county, out of the funds derived from the insurance policy, then on deposit in the county treasury; $3,500.00 thereof to be paid when the foundation had been put in and the walls built up to the established grade line, and the remaining $2,500.00 when Stage A was completed.

Article 19 of the contract contained this further provision:

"It is agreed by the parties hereto that the contractor and the county will make a legal contract for the erection and completion of the remainder of the building according to plans, specifications and proposal accepted by the building committee for seventeen thousand seven hundred and fifty ($17,750.00) dollars, to be paid in annual installments, with interest thereon at six per cent per annum, payable annually until said debt is fully paid. Said contract shall be made satisfactory to the attorneys of both parties hereto."

Pursuant to the above agreement, the parties made a second contract on August 7, 1913, with the appellant, for the completion of the court house, known as Stage B, for $17,750.00, which aggregated $22,775.00 when the interest was included. This sum was to be paid in five installments as the work progressed, by the delivery of county warrants to the contractor for the contract price, less $250.00 which was to be paid in cash. These warrants amounting to $22,525.00, were to be cared for and paid out of a special tax of twenty cents on each $100.00 of assessed property, levied for that purpose for the years 1914 to 1921, inclusive.

In the second contract, article 2 of the first contract for the construction of Stage A is referred to and made part of the second contract, only so far as said article

might be applicable for the purpose of aiding the county and the contractor in the construction of the work under the second contract; it being expressly provided, however, that nothing in the second contract should be construed to conflict or interfere with the first contract of July 18, 1913, for the building of Stage A.

Article 7 of the second contract provided that it should not become binding upon either party thereto, and nothing should be done under it by either party until the contractor should have finished his work on Stage A according to the contract of July 18, 1913, and until the contractor had been paid the contract price of $6,000.00 therefor.

As above stated, the contract of July 18, 1913, was made by the building committee upon behalf of Wolfe County and its fiscal court. But at a meeting of the fiscal court held on August 7, 1913, said contract for the construction of Stage A was approved, and the contract for Stage B was made and approved. The order recited that the contract price of $6,000.00 for Stage A was to be paid out of money then on hand in the county treasury, and the contract price for Stage B under the second contract was to be paid as heretofore recited and shown in the second contract; and for the purpose of providing the revenue to pay the $22,775.00 that would be payable under the second contract, the fiscal court at said meeting of August 7, 1913, levied a tax of twenty cents on each $100.00 of all taxable property in the county for and during the years 1914 to 1921, inclusive. No part of this tax levy was to be applied to the payment of the contract price for building Stage A because that work was to be paid for out of the $6,000.00 insurance money then on hand.

On August 11, 1913, James I. Holland, 'a citizen and taxpayer of Wolfe County, filed this action against the Falls City Construction Company and Wolfe County, seeking to enjoin the execution of the two contracts above mentioned, upon the ground that they violated section 157 of the Constitution, because the indebtedness created by the two contracts was in excess of the revenue which could be raised in Wolfe County, by taxation, during the year in which the contracts were made. It was further alleged that the contract of July 18, 1913, for Stage A, and the contract of August 7, 1913, for Stage B, were really one contract, and had been divided for the purpose of evading section 157 of the Constitution. An

amended petition alleged that the contracts also violated section 158 of the Constitution.

As no attempt was made by the plaintiff to procure a temporary order of injunction, the appellant proceeded under its first contract in the construction of Stage A of the court house. While this suit was pending, and shortly after Stage A had been completed and the first installment of $3,500.00 of the contract price had been paid, the personel of the fiscal court of Wolfe County was changed by an election of new members who were hostile to the building of a new court house. Consequently, by an amended petition, the new fiscal court joined in the prayer of the petition and sought to have the contracts with the Construction Company declared void, and to recover back from the Construction Company $3,500.00 of the contract price for Stage A which had been paid to it out of the insurance money, and pursuant to the contract of July 18, 1913.

Upon the trial the chancellor, in the main, found the facts and the law as contended for by the plaintiffs. He found, as a fact, that the contracts of July 18, 1913, for Stage A, and of August 7, 1913, for Stage B, were so connected and dependent, the one upon the other, that they were in fact but one contract for the building of the entire court house, and were drawn at different dates and in separate instruments for the purpose of evading the provisions of sections 157 and 158 of the Constitution.

As conclusions of law, he found that the two contracts when treated as one, were in violation of section 157 of the Constitution, because they attempted to create an indebtedness on Wolfe County for an amount greater than the income and revenue provided for the year in which said indebtedness was created, and violated section 158 of the Constitution, because they attempted to incur an indebtedness for Wolfe County in excess of two per cent. of the value of the taxable property therein, estimated by the assessment next before the last assessment previous to the incurring of the indebtedness.

Consequently, the chancellor held the two contracts to be void, and enjoined the fiscal court from further attempting to execute them, and from paying to the Construction Company any part of the $2,500.00 balance then due it under the first contract for Stage A, although the money was then in the county treasury, and had been dedicated to that purpose. So much of the cross-petition

of the fiscal court as sought to recover from the Construction Company the $3,500.00 which had theretofore been paid it on account of the construction of Stage A, was dismissed. The Construction Company appealed from so much of the judgment as nullified its contract under which it had built Stage A, and the fiscal court took a cross-appeal from so much of the judgment as denied it a recovery of the $3,500.00 theretofore paid the Construction Company in part payment for the construction of Stage A as heretofore recited.

There is no appeal by either party from so much of the judgment as held the contract for the construction of Stage B void, or from the judgment enjoining the collection of the tax of twenty cents on each $100.00 worth of taxable property.

As we view the case, the only question really in issue upon this appeal is whether the contract for building Stage A of the court house violates section 157 of the Constitution, which reads as follows:

"The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz.: * * * for counties * * * fifty cents on the hundred dollars, unless it should be necessary to enable such * * * county, * * * to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution. No county * * * shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for each year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality be authorized to assume the same."

Section 158 of the Constitution further provides, among other things, that a county shall not be authorized or permitted to incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding two per centum on the value of the taxable property therein, to be estimated by the assessment next before the last assessment previous to the incurring of the indebtedness.

These two sections impose a limitation on the power of a county to create indebtedness; section 157 providing a barrier against any indebtedness, for any purpose, beyond the revenues for the year, without a vote of the people, and section 158 a further barrier against the creation of an indebtedness in the aggregate, beyond the limit there fixed. Bradford v. Fiscal Court of Bracken County, 159 Ky., 544.

It is stipulated of record that the total assessment of property in the county as shown by the last preceding assessment, was $1,409,467.00; that there were no more than two thousand persons in the county subject to the payment of a poll tax; that the total revenue and income of the county for the year was not more than $10,500.00; that it had no other assets or income on hand other than the $6,000.00 which it had collected as insurance on the old court house; that the county's existing and current indebtedness aggregated as much as the taxes and income of every kind, including the $6,000.00 collected from the insurance company; that if the county paid its existing and current indebtedness it would have no assets or money with which to pay any part of the contract price for Stage A of the court house; and that the fiscal court had, by an order, directed that the $6,000.00 insurance money be paid on the construction of Stage A of the court house.

Appellee contends that the fiscal court was required by law to apply the $6,000.00 insurance money to the payment of its existing indebtedness, and that it could not legally use it as it did, in paying for the construction of Stage A of the court house.

This is the principal question in the case; and as it will dispose of the case if the action of the fiscal court in that respect be approved, we will first consider the legal effect of that act.

Field v. Stroube, 103 Ky., 114, presented the precise question under consideration. In that case the fiscal court of Bracken County having on hand a surplus of $11,000.00, appropriated $25,000.00 for the purpose of building a court house, and levied a tax to raise the balance necessary, after deducting the $11,000.00 and other cash items. A taxpayer sued to enjoin the execution of the contract, upon the theory that the expenditure of $25,000.00 violated section 157 of the Constitution because the contract for that sum created a debt which exceeded the income and revenue for the year.

In answer to that contention, the court said:

"In our opinion, no such question is involved. To the extent that there was money on hand or assets available for the purpose in view, to that extent there was no creation of any debt, but only an appropriation of cash or assets on hand. The indebtedness in fact created was the sum represented by the difference between the available assets on hand and the contract price of the work; and this amount was provided for by a levy for the current year sufficient to meet the requirements of the proposed contract. It is urged that by reason of section 180 of the Constitution, the surplus taxes levied and collected for the years prior to 1895, for certain county purposes, can not be diverted from those purposes. We think when the object to be attained by the levy has been accomplished, and a surplus remains, it must be treated as a part of the general funds of the county and available for general county purposes."

A similar question was presented in Overall v. The City of Madisonville, 125 Ky., 684; 12 L. R. A. (N. S.), 433, where the city of Madisonville contracted to build a municipal lighting plant. The city had on hand $8,000.00 in cash, and in making its contract, it had done so by piece-meal, making one contract for poles for $1,200.00; another contract at a subsequent time for machinery for $9,892.00, and so on; the aggregate outstanding contracts, however, at no time exceeding the amount of the cash on hand. It is true, the city was out of debt; but from the view the court took of the case we do not think the fact that the city might have been in debt to the extent of $8,000.00 affected, in any way, its right to use the $8,000.00 cash on hand as it did, in procuring an electric lighting plant.

In the course of its opinion, the court said:

"The city of Madisonville, at the beginning of the year 1906, was not only out of debt, but had $8,000.00 in cash on hand. The assessed value of property for taxation was about $1,500,000.00. Under the Constitution, the city was authorized to levy a tax of 75 cents on the $100 of taxable property. Thus its revenues from the source of property tax alone was $11,250. It had about 900 poles from which $1,350 could have been realized. The only legal liability which the city incurred in May of 1906, on account of the electric light plant, was for the poles, $1,200. The contract for the machinery, amounting to $9,892, was not closed until July of 1906. In the

meantime the city had collected of delinquent taxes from former years, and in license taxes, fines, and from miscellaneous sources, a sum largely in excess of the above-named liability of about $11,000, created on account of the light plant. And in September, 1906, when the city closed the contract for the incandescent wire system and for building machinery foundations, amounting to some $7,928, it had collected from the sources above named, including *ad valorem* taxes, poll taxes, and cash on hand at the beginning of the year, about $600 more than the total of the light plant liability so far contracted, and over and above all its ordinary running expenses. By January 1, 1907, it had paid out of the income and revenues of 1906 all its current expenses and all the cost so far incurred in building the plant, and had considerable money left in the treasury. With this, and by anticipating the revenues of 1907, it in January, 1907 contracted for the remainder of the line (about $7,500) known as the "Arc Line." In this way the city has contracted no debt beyond its current revenues. It agreed to pay cash, and has paid cash for all it bought. It accomplished this by not buying more than it had the means on hand, or certainly then due it, to pay for. The city had the right to apply the $8,000 on hand January 1, 1906, to any governmental purpose. It appears to have been a general accumulation in the city treasury—doubtless from license taxes, fines, and the like. This surplus was available for any proper purpose for which taxes might have been levied. Field v. Stroube, 103 Ky., 114, 19 Ky. L. R., 1751, 44 S. W., 363; Wathen v. Young, 103 Ky., 36, 19 Ky. L. R., 1678, 44 S. W., 115; Whaley v. Commonwealth, 110 Ky., 154, 61 S. W., 35, 25 Ky. L. R., 1292."

Under section 157 of the Constitution, the rule applicable to municipalities applies equally to county fiscal courts.

Under these explicit authorities it must be conceded that the fiscal court had the right to apply the $6,000.00 insurance money, as it did, in payment for the building of Stage A.

The plain purpose of section 157 of the Constitution is to require municipalities to live within their means and income, to prevent them from anticipating the revenues of a future year, which would thereby cripple the municipality in the future exercise of its governmental functions. The reason for the provision in no way prevents a municipality from spending the money it has on hand;

on the contrary, we see no constitutional or other objection to a municipality using its surplus money on hand for any lawful purpose. It was expressly so held in the Overall case, where it was said the city had the right to apply the cash on hand to any governmental purpose; it was available, "regardless of the sources from which it was collected, for any proper purpose for which taxes might have been levied."

It is further contended, however, that a fiscal court has no right to build a court house by piece-meal, as was attempted, and executed, in part, in this case. The idea is far-fetched, since it must be admitted that the character of the proposed court house, and the method of its construction, are left wholly to the discretion of the fiscal court, within the limits of the Constitution and the Statutes.

The only limitation placed upon the fiscal court, in this respect, is that it must live within its annual income, provided by a constitutional tax levy. There are, therefore, three methods only for the fiscal court to pursue; one is by a sale of bonds under a vote of the people; another is to accumulate a sufficient fund out of the annual income until the court house can be wholly contracted for at one time; the third by building it in piece-meal, from year to year, out of the annual income, as it is collected. All of these methods are entirely reasonable, and have been expressly approved by this court, as being legally authorized. We will call attention to a few of those cases.

In Overall v. City of Madisonville, *supra,* this court said:

"Appellant contends that the city could not legally contract for a light plant in piece-meal. The reason assigned is that no part of it is valuable as a public utility till all of it is assembled. The reason is not satisfying. If the plant was not run after it was bought, it would equally fail to meet the public requirement. Yet that fact ought not to avoid an otherwise perfectly valid contract for its construction. In the matter of buying and installing such plant, the city is left wholly to the judgment of its council as to the kind, the cost, when and where it shall buy, and how much at a time. There is only one limitation upon the city; that is, it shall not become indebted beyond the income and revenues of the year without the assent of two-thirds of the voters voting on the question. The Constitution did not design an

interference with a free exercise of a city's judgment as to its expenditures for public purposes, provided it had the means at hand to pay for them. It did not discourage cash payments, but rather encouraged them. The course of appellee city in buying only what it could pay for, and as it could pay for it, is one that might be more frequently followed with satisfactory results to taxpayers.''

. In Trustees of White School District No. 15 of Lyon County v. Cummins, 33 Ky. L. R., 739, 111 S. W., 286, the district school house was condemned, in 1902. In June, 1903, the superintendent again condemned the school house, and ordered a new one to be built. A similar order was given on July 1, 1904, and on July 3, 1905. In order to comply with this command, the school trustees, in each of the years named, levied a tax for the purpose of building the school house, which they did in 1905, at a cost of $400.00. This was $100.00 more than had been raised in the district for the purpose, or could be legally raised, by taxation, for the three years, 1903, 1904 and 1905.

In that case, as in the case before us, a taxpayer sued to enjoin the sheriff from collecting the taxes for the year 1905, upon the ground that they had been levied to pay an excessive debt in violation of section 157 of the Constitution. This court held, however, that although the taxes levied and collected for the three years would amount to less than $300.00, which, when taken in connection with the other resources in the hands of the trustees, would not be sufficient to pay the debt incurred for the building of the school house, that was no reason why the taxpayers should not pay the taxes which had been levied.

And, in approving the method followed by the trustees in accumulating the tax from year to year, the court said:

''The county superintendent having condemned the school house, the trustees had authority to make the levy which they made. Having made the levy, they could allow the fund to accumulate until it amounted to a sufficient sum to warrant them in undertaking the school house. Any indebtedness contracted in excess of the income and revenue provided for the year and other assets on hand is void under section 157 of the Constitution, and the municipality can not be authorized to assume it. That which is void under this section is the in-

debtedness in excess of what the trustees may lawfully create. In other words, *it is the balance due on the building of the school house over and above the levies and assets in hand*. But the trustees had authority to make a levy for the year 1905, and were authorized to use the assets on hand in building the school house. They had a perfect right to make a levy in 1903 and another in 1904, and then wait to 1905, and make another levy and build the school house. This whole question was carefully considered in the case of Overall v. City of Madisonville, 102 S. W., 279, 31 Ky. L. R., 278, 12 L. R. A. (N. S.), 433. The opinion in that case fully sustains the action of the trustees here.''

In Fiscal Court of Franklin County v. Commonwealth, 139 Ky., 307, the court said:

''The fiscal court may make a levy from year to year up to the constitutional limit, and may set apart so much of this levy for the building of a new court house as may be spared after meeting the other necessary expenditures, and in this way in a few years a sufficient court house fund may be accumulated; but the fiscal court is without authority now to make a levy sufficient to build a court house or to create an indebtedness for that purpose beyond the revenues provided for the year.''

And, in answering the contention that the need of a court house in Bracken County was so great as to rise to the dignity of an emergency, the court, in Bradford v. Fiscal Court of Bracken County, 159 Ky., 544, said:

''The fiscal court can secure a court house for the county. It may raise a fund for that purpose by the sale of bonds, provided authority to issue and sell same be obtained by the assent of two-thirds of the voters of the county voting at an election for determining whether the indebtedness shall be incurred, or by the more tedious, though equally legal method, of levying and collecting a tax of ten cents on the hundred dollars in each year and deferring further work on the building until a fund is thus raised to complete it, or by doing the work by piece-meal, contracting each year for the work done in such year and levying in each year a tax within the constitutional limit to pay for the work on the building done therein.''

If there could have been any doubt upon the right of the fiscal court to build the court house in piece-meal, it certainly would have been dispelled by the explicit lan-

guage above quoted. It not only approves doing the work by piece-meal whenever it becomes necessary through financial exigencies, but suggests that it should be so done if it be necessary to avoid a violation of section 157 of the Constitution.

If the trustees had the right to collect its funds from year to year, until it had accumulated a sufficient sum to do the entire work, we do not see why, upon principle, they should not be allowed to expend in each year the amount collected in that year upon a portion of the work, and thus proceed to its completion. The method and time in which public work shall be done, when uncontrolled by statute, is within the discretion of the public officials having control of the work; it is not for the court to substitute its judgment for theirs. Overall v. City of Madisonville, 125 Ky., 697.

The very recent case of Bradford v. Fiscal Court of Bracken County, 159 Ky., 544, is directly in point. There the fiscal court contracted for the building of the basement of a court house for Bracken County, for $17,000.00; and the basement, up to the window sills of the first floor was built and paid for precisely as Stage A was built and paid for in the case at bar. An additional sum of $42,125.00 was necessary to complete the building according to the plans and specifications. After making a second contract calling for the completion of the building for $42,125.00, the fiscal court provided for its payment in annual installments, payable on January 1st of the years 1915 to 1924, inclusive; and, for the purpose of meeting those payments the fiscal court ordered that a tax be annually levied, set apart and dedicated for court house purposes, and paid over to the contractor as provided by the contract. The method of payment was the same as that presented by the second contract in the case at bar. It was held that the contract violated section 157 of the Constitution, because it exceeded the amount of the yearly income and revenue on hand; and that a debt payable in the future was no less a debt than if payable presently, or immediately upon its creation.

It is manifest, however, that the second contract in that case was invalid, for the same reason that the contract for Stage B in the case now before the court was held invalid, and which appellant is not seeking to uphold. The Bracken County case is an apt authority to sustain the ruling of the chancellor in the case at bar, in

so far as he annulled the second contract for the building of Stage B; it has no application, however, that would annul the first contract for the building of Stage A. On the contrary, no claim was made in that case, that the first contract, under which $17,000.00 had been used in building the basement, was invalid. Its legality was tacitly admitted,

The opinion in the Bracken County case quoted with approval the language from Overall v. City of Madisonville, above quoted, upholding the right of the city to contract for a lighting plant, in piece-meal.

But, it is further contended that the two contracts for Stage A and Stage B were necessary to complete the court house; that they must be construed together; and that if one is invalid, both are so.

We see no merit in this contention. The contracts are separate and distinct; they cover entirely separate and distinct work; they carry separate obligations upon the part of both the contracting parties; and either, if legal, can stand, although the other should fall. It avails nothing to say that the fiscal court made two contracts, one of them being illegal and the other valid, for the purpose of evading the Constitution, since the question is, does the first contract for Stage A evade section 157 of the Constitution? If it does not, when tested by legal rules, then clearly the parties had a right to make it, regardless of their intentions. To say that the parties had a right to make the first contract for the building of Stage A, but that they could not legally make it because they intended thereby to violate the Constitution in the respect above pointed out, begs the question by assuming that the contract for building Stage A violated the Constitution and was, therefore, illegal, which is the question in issue.

If the two contracts for the building of Stage A and Stage B had been united in a single contract, but were, nevertheless, separable, the first contract for the building of Stage A, being valid and capable of execution without regard to the remainder of the contract, would have been enforceable. The general rule upon this subject is stated in 9 Cyc., 648, as follows:

"Where promises are divisible, that is, where the contract contains a number of promises to do a number of similar acts, a breach of one of them does not discharge the other party. Illustrations of divisible promises are to be found in contracts to receive and pay for

goods by installments. Where the installments are numerous, extending over a considerable period of time, a default either of delivery or payment would not appear to discharge the contract, although it must necessarily give rise to an action for damages. Where one contract relates to separate matters, a breach as to one matter does not excuse the other party from performance as to the other matters. If the promise is entire or indivisible, and is not independent as heretofore explained, its entire performance is as a rule a condition concurrent or precedent to the liability of the other party to perform.''

Furthermore, the two contracts are not only separable, but they are separated; and, if the first contract for the building of Stage A is legal, it must stand, although the second contract for the building of Stage B is illegal and unenforceable.

We conclude, therefore, that the first contract for the building of Stage A was a valid contract; that the first installment of $3,500.00 was properly paid to the appellant, and that the second installment of $2,500.00 for the building of Stage A is due the appellant, and should be paid out of the insurance money on hand and set apart for that purpose.

In view of the conclusions reached, it becomes unnecessary to consider the effect of section 158 of the Constitution upon the case; that question is not here.

The judgment of the circuit court is reversed upon the original appeal and affirmed upon the cross-appeal, with instructions to enter a judgment as above indicated. Judge Turner dissenting.