HARRIS *v.* CITY OF LANSING.

BARNES *v.* SAME.

1. MUNICIPAL CORPORATIONS—PUBLIC BUILDINGS—CONTRACTS—COM-
PETITIVE BIDDING—DEBT LIMITATION—PRIOR APPROPRIATION.
    A home-rule city's contract for construction of a public building
    is not invalid for lack of competitive bidding or for lack of
    re-advertisement and rebid before the letting of the contract
    after plans and specifications were changed, where the city
    charter does not contain a requirement that there be com-
    petitive bidding or re-advertisement or call for further bidding,
    no imposition of a maximum debt limitation nor requirement
    of prior appropriation as a condition to the creation of a
    valid indebtedness.

2. SAME—PUBLIC BUILDINGS—CONTRACT FOR PARTIAL CONSTRUCTION.
    Contract by home-rule city for construction of a public building
    was not invalid by reason of the fact that when such con-
    tracted construction was completed the building would be
    only partially finished and not usable for the intended pur-
    poses, where city was committed to pay less than the sum
    it had on hand for such purpose.

3. SAME—STATUTES—PUBLIC POLICY—CONSTRUCTION OF PUBLIC
BUILDINGS—GENERAL FUND.
    Statute declaring the policy of the State requiring that the
    entire amount of moneys necessary for the completion of
    the contemplated project, or a complete unit thereof, shall
    be available in cash in the general fund before any contract
    shall be let for such building, does not apply to city govern-
    ments, hence, does not lay down a rule of public policy as
    to them (CL 1948, § 21.9).

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur, Municipal Corporations §§ 562, 563.
[2] 38 Am Jur, Municipal Corporations § 505 *et seq.*

4. SAME—CONSTRUCTION OF PUBLIC BUILDING—PARTIAL COMPLETION
—INJUNCTION.

    City council of home-rule city was within its authority in appropriating funds and authorizing execution of contracts for construction for partial completion of building for use as a city hall and jail, where the amount for which it became bound to pay was less than the sum on hand for such purpose, hence, it was not subject to being enjoined from proceeding with the construction ·contracted for in the contract questioned, the matter of completion being left to future councils (CL 1948, § 21.9).

Appeal from Ingham; Kane (Edward T.) J., presiding. Submitted June 9, 1955. (Docket Nos. 37, 38, Calendar Nos. 46,530, 46,531.) Decided June 29, 1955.

Bill by Harold G. Harris, Melvin Ray Barnes and Henry J. Novakoski against the City of Lansing, a home-rule city, its city council and certain of its officials to enjoin granting of contract for construction of city hall.

Bill by Melvin Ray Barnes, Raynold F. Wall and Harold G. Harris against same· defendants and the Christman Company to set aside construction contract and enjoin further acts under the contract.

Both cases dismissed on motion. Cases consolidated for hearing and appeal. Plaintiffs appeal. Affirmed.

*Pierce & Planck* (*Barnard Pierce,* of counsel), for plaintiffs.

*Charles P. Van Note,* City Attorney, for defendant City of Lansing and its officials.

*Jennings, Fraser, Parsons· & Trebilcock,* for· defendant the Christman Company.

REID, J. The above-captioned chancery cases have been consolidated for the purposes of hearing and determination on appeal.

Some time in 1944 to 1946 the architectural firm of Black & Black was retained by the city of Lansing to prepare plans for a new city hall and police building. The plans were substantially revised from time to time. The plans had been brought up to date, prior to September 13, 1954, and on that date, September 13th, the city council of Lansing authorized advertising for bids. The bids on being received were referred to the committee on buildings and properties, who then consulted the architects. There were 5 general contract bids, 4 or 5 mechanical bids, and about an equal number of electrical bids. The division of bids into partial bids seems to be referred to by architects as alternates.

The city over a period of years had accumulated for the contemplated construction $2,787,381.07. The lowest of the total bids that the committee and architects could procure was in the neighborhood of $4,500,000 for the total construction.

At an informal meeting of the city council on December 10, 1954, the architects prepared a proposed contract with the Christman Company, defendant, calling for the expenditure of $2,577,368 on the proposed building, for which sum the building would be complete as to exterior walls, floor construction, necessary masonry work, duct shafts, elevator shafts, et cetera, but the structure would be without heat, lights, water or elevator facilities and would not be ready to use. It would be without ceilings and floors and without the metal partitions, without jail equipment, but would include all of the windows, glass and glazing, so that the entire structure would be enclosed so far as the elements are concerned. It could not be used for police purposes.

Part of the total sum heretofore spoken of, $2,787,-381.07, was funds made available by a bond issue for the construction of a police building in the amount of $500,000.

The first of the 2 above-captioned cases was begun on December 20, 1954, by the filing of the plaintiffs' bill, and on the same day the circuit court, on motion, enjoined the city from entering into a proposed contract with the Christman Company as authorized by the city council of the city of Lansing on December 13, 1954. Henry J. Novakoski was party to the first bill but not to the second and, instead of Novakoski, Raynold F. Wall was plaintiff in the second bill. December 28, 1954, defendants' answer and motion to dismiss were filed. February 1, 1955, the opinion of the circuit court to dismiss the bill of complaint was filed. The first above-entitled cause came on for hearing on plaintiffs' order to show cause and defendants' motion to dismiss, at which hearing proofs were taken. Defendants' motion to dismiss was granted by the trial court, February 1, 1955, and a decree entered the same day, which decree was vacated on February 19, 1955. The contract (with the Christman Company) was executed immediately following the decree of February 1, 1955, and prior to the vacation of that decree. On February 23, 1955, the plaintiffs began the second suit to enjoin performance under the contract and to obtain its cancellation. Defendant Christman Company's answer to the second suit was filed February 25th and answer of the other defendants on February 28th. On February 25, 1955, a decree dismissing the first suit was re-entered, and on the same day a hearing on the order to show cause and on defendants' motion to dismiss the second case was held. The second suit was dismissed by circuit court decree on February 25, 1955. Plaintiffs appeal from

the entry of the decree of February 25, 1955, as to each of the 2 cases.

The first above-captioned bill of complaint set forth claimed illegality of action on the part of the defendant city as follows:

A. That the council improperly failed to re-advertise for and request re-submission of bids upon revised plans and specifications.

B. That the council was without authority to authorize contracts entailing the expenditure of more money than was contained in the fund for the new city hall and police building.

C. That the council committed future city councils to make appropriations for such amounts as would be necessary to complete the public buildings.

The second bill of complaint contains no claim of illegality for failure of the council to re-advertise or call for further bids prior to letting the contract. The defendant city asserts (neither bill of complaint makes any statement to the contrary thereof) that there is no requirement whatever in the Lansing city charter requiring that contracts for public works be submitted for competitive bidding, nor that changes in plans and specifications upon a public work which has already been open to public bidding must be re-advertised and rebid before the contract can be let.

The Lansing city charter does not impose a maximum debt limitation nor a requirement of prior appropriation as a condition to the creating of a valid indebtedness, in connection with which see the opinion of this Court in *DiPonio* v. *City of Garden City,* 320 Mich 230, 237, 238:

"Defendant's charter is peculiar in that it contains no limitations on the city's right to make contracts or increase its debts unless prior thereto appropriations and necessary funds and provision for raising these funds have been made. Under section 17 of

chapter 30 of the fourth-class city act (CL 1929, § 2151* [Stat Ann § 5.1946]) and under many charters of other cities, there will be found provisions prohibiting the entering into contracts prior to a tax or assessment having been levied to pay the cost. Cases cited by defendant referring to such cities are not in point."

The contract in question in this case required the city to pay the contractor the sum of $2,577,368 for the work required of the contractor under the contract. The city had on hand available at the time of entering into the contract more than that sum of money.

In order to complete the project, approximately $1,250,000 of additional funds would be required. The additional sum of $1,250,000 represents the cost of certain alternates, numbered 6 and 8. The city had the option of accepting or refusing one of these alternates prior to June 1, 1955, and the other alternate on or before June 1, 1956, according to plaintiffs' first bill of complaint. The city is in no way bound by contract to accept either or both of the alternates in question. Hence, it is clear that by entering into the contract complained of by the plaintiffs, for the partial completion of the building, the defendant city has not bound its successors to the completion of the project, but only bound itself to the extent of $2,577,368, for which it has more than sufficient funds. For authority authorizing piecemeal construction of public works under such circumstances see *Overall* v. *City of Madisonville,* 125 Ky 684 (102 SW 278, 12 LRA NS 433). See, also, *Falls City Construction Company* v. *Fiscal Court of Wolfe County,* 160 Ky 623 (170 SW 26). See, also, *Yaryan* v. *City of Toledo,* 28 Ohio Cir Ct 259, affirmed, 76 Ohio St 584 (81 NE 1199).

---

* CL 1948, § 110.17.—Reporter.

In the *Overall Case,* the Kentucky court says (pp 696, 697):

"Appellant contends that the city could not legally contract for a light plant in piecemeal. The reason assigned is that no part of it is valuable as a public utility till all of it is assembled. The reason is not satisfying. If the plant was not run after it was bought, it would equally fail to meet the public requirement. Yet that fact ought not to avoid an otherwise perfctly valid contract for its construction. In the matter of buying and installing such plant, the city is left wholly to the judgment of its council as to the kind, the cost, when and where it shall buy, and how much at a time. There is only 1 limitation upon the city; that is, it shall not become indebted beyond the income and revenues of the year without the assent of 2/3 of the voters voting on the question."

In the *Yaryan Case,* the Ohio court approved of a contract for the partial erection of a water plant at a cost of $565,000, when the plant could not be completed for less than a total of $765,000. The court found that the ordinance did not fix the total project at $565,000 but only fixed the expenditure for the first stage thereof. The court affirmed piecemeal construction of public works, within then presently available funds.

Plaintiffs cite CL 1948, § 21.9 (Stat Ann § 3.289) as declaring the policy of the State requiring that the entire amount of moneys necessary for the completion of the contemplated project, or a complete unit thereof, shall be available in cash in the general fund before any contract shall be let for such building. However, the cited statute is by its terms applicable to "All departments, institutions, boards, commissions, and offices of the *State* government except the university of Michigan and the Michigan State college of agriculture and applied science"

which does not include city governments and cannot be said to lay down a rule of public policy as to them.

In the instant case, the city not being bound to accept or reject any alternate, we determine that the city council did not exceed its authority in executing the contract with the Christman Company for $2,-577,368, and that the defendants are not subject to being enjoined from proceeding with the construction contracted for in the contract in question.

The Lansing city council may to the extent which it has lawfully appropriated funds therefor, lawfully authorize a contract for the erection of part of a city hall and jail building, reserving to future councils decision as to the completion thereof.

The decrees dismissing the bills of complaint are affirmed. Costs to defendants.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.